Quentis HARDIMAN Appellant
(Defendant Below),

v.

STATE of Indiana Appellee
(Plaintiff Below).

No. 49S00–9901–CR–10.

Supreme Court of Indiana.

April 14, 2000.

Mark Small, Marion County Public Defender Agency, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury found appellant Quentis Hardiman guilty of murder, a felony, Ind.Code § 35–42–1–1. The trial court sentenced him to sixty-five years in prison. On direct appeal, Hardiman raises the following issues:

1. Whether a detective's investigative report containing multiple hearsay was properly excluded;

2. Whether the identification an eyewitness made in court was tainted by an unduly suggestive pre-trial photo array;

3. Whether the State violated discovery orders by disclosing a fingerprint match only days before the trial began; and

4. Whether the evidence was sufficient to support the conviction.

### Statement of the Facts

The evidence most favorable to the jury's verdict revealed that on July 13, 1997, several people held a barbecue at a local park and gathered later in the parking lot of an apartment complex in Indianapolis. Demetria Gillespie, her boyfriend Harvey Webber, and Quentis Hardiman were among those present.

At about midnight, Torrence Terrell and two females arrived at the parking lot in a Chevrolet Suburban. Terrell got out of his vehicle, but he left its headlights on and the radio playing at a high volume. Several people, including Hardiman, approached Terrell and asked him to turn off his lights and turn down the music. Terrell refused, and he and Hardiman had a verbal argument near the Chevrolet. Both Gillespie and Webber were seated directly adjacent to this scene. After several minutes of argument, Hardiman pulled out a handgun and shot Terrell multiple times at close range. Terrell died.

Detective Thomas Lehn arrived shortly after the incident and attempted to secure the crime scene. Some thirty minutes later, he took statements from the two women who had accompanied the deceased. While they had not witnessed the shooting, they informed the detective that they heard several people in the crowd say that Webber was the shooter. The detective mentioned these statements in his report, and the defense attempted to admit the report at trial.

While investigating the crime scene, the police obtained several fingerprints from Terrell's car. The State initially tried to match these prints to those of Hardiman, but was unsuccessful due to a problem with the computer system. One week before trial the State again requested a print comparison and found the two prints were a match. Alleging a discovery violation, Hardiman sought to suppress this evidence, but the trial court denied his motion.

### I. Admissibility of Police Report

Hardiman first contends that the statements found within Lehn's police report properly fit within a hearsay exception and should have been admitted at trial. In contrast, the State claims that the police report contains multiple hearsay and that each instance of hearsay does not qualify under an exception.

■ The trial court excluded the report, finding that the sources of the information in it suggested a "lack of trustworthiness." (R. at 485.) The trial court's discretion to admit or exclude evidence is broad, and this Court will not reverse the trial court absent an abuse of that discretion. *See Platt v. State*, 589 N.E.2d 222 (Ind.1992). A trial court abuses its discretion when its evidentiary ruling is clearly against the logic, facts and circumstances presented. *Id.*

■ Hardiman is seeking to prove that Webber was, in fact, the shooter by introducing a written report that records statements by witnesses not present at trial that they heard unnamed members of a crowd say that it was so. This is a tall

order. When faced with multiple hearsay, "each part of the combined statement" must conform with a hearsay exception. Ind. Evidence Rule 805. In attempting to introduce the police report, Hardiman must show that each assertion—the police report, the witness's statement, and the crowd's shouting—fits within an exception to the hearsay rule.

As a starting point, the police report itself must qualify under one of the hearsay exceptions. Rule 803(8) covers the admissibility of public records and reports. When offered by the accused in a criminal case, investigative reports by police personnel fall within this exception. Evid. R. 803(8)(a). Because Hardiman offered the report, the first hearsay problem is resolved favorably to him.

The statements of the two witnesses to the detective are more problematic. In his brief, Hardiman fails to recognize the fact that the statements attributed to the two women are hearsay. Instead, he moves on to the utterances of the crowd immediately after the shooting, saying they are "excited utterances." We need not address this third hearsay problem, for Hardiman's mission stalls on the admissibility of the women's statements.

Detective Lehn interviewed the two women, Valetta and Regina Scurlock. He recorded their statements individually, commencing about thirty minutes after his arrival on the scene. Roughly speaking, the Scurlock statements were given forty-five minutes after Terrell's shooting. While the women were emotionally shaken, they were neither crying nor agitated when the detective interviewed them. (R. at 458–59.)

While Hardiman has not suggested a reason the Scurlock statements might be admissible, we suspect the most promising hearsay exception would be an "excited utterance" under Rule 803(2). An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event." Evid. R. 803(2).

The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an overpowering experience is likely to be truthful. *Gye v. State*, 441 N.E.2d 436 (Ind.1982). While the event and the utterance need not be absolutely contemporaneous, lapse of time is a factor to consider in determining admissibility. *Holmes v. State*, 480 N.E.2d 916 (Ind. 1985). Similarly, that the statements were made in response to inquiries is also a factor to be considered. *Gye*, 441 N.E.2d at 438. Whether given in response to a question or not, the statement must be unrehearsed and made while still under the stress of excitement from the startling event. *Yamobi v. State*, 672 N.E.2d 1344 (Ind.1996).

The heart of the inquiry is whether the declarants had the time for reflection and deliberation. The trial court could reasonably have concluded that they did. The women's statements were given well after the shooting, and the two were not directly connected to the shooting except as bystanders. Moreover, the statements were not spontaneous declarations; the women were waiting in line to give statements to the investigating officer of an apparent homicide. This collection of circumstances persuades us that the trial judge acted within the bounds of his discretion in excluding the statements.

## II. A Tainted Identification?

Hardiman next argues it was error to let Gillespie identify him in court because her testimony was tainted by an impermissibly suggestive pre-trial photo array.[1] The State responds by saying the prior identification was not suggestive and

---

1. Gillespie had already identified Hardiman from the stand when defense counsel objected to the later admission of her pre-trial identification on grounds of cumulative evidence. On appeal, Hardiman does not contest this second identification.

that Gillespie had an independent basis for identifying Hardiman.

Roughly one month after Terrell was shot, police approached Gillespie concerning identification of the shooter, but she responded that she had seen nothing. She later justified this silence by asserting that she feared retribution for assisting the police. Not until November did she come forward with information regarding the murder, and she subsequently identified Hardiman. After she had selected Hardiman's photo, detective Spurgeon informed her that she had identified the man the police believed shot Terrell. Asserting that this was an impermissibly suggestive procedure, Hardiman moved *in limine* to suppress Gillespie's in-court identification. The trial court denied the motion.

■ It is certainly possible that a pre-trial identification may occur in a manner so impermissibly suggestive and conducive to irreparable mistaken identification that permitting the witness to identify the defendant at trial may violate due process of law. *Young v. State*, 700 N.E.2d 1143 (Ind.1998). On the other hand, a witness who participates in an improper pre-trial identification procedure may nevertheless identify the defendant in court if the totality of the circumstances shows convincingly that the witness has an independent basis for the in-court identification. *Id.*

■ Factors to be considered in making this determination include the amount of time the witness was in the presence of the perpetrator, the distance between the two, the lighting conditions, the witness' degree of attention to the perpetrator, the witness' capacity for observation, the witness' opportunity to perceive particular characteristics of the perpetrator, the accuracy of any prior description of the perpetrator by the witness, the witness' level of certainty at the pre-trial identification, and the length of time between the crime and the identification. *Utley v. State*, 589 N.E.2d 232, 238 (Ind.1992), *cert.*

*denied,* 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142 (1993).

Hardiman argues that the policeman's statement following Gillespie's identification was unduly suggestive. We need not decide whether the events that transpired after the lineup violated Hardiman's Fourteenth or Sixth Amendment rights, however, because we are satisfied that the totality of the circumstances clearly and convincingly demonstrates that Gillespie had an independent basis for identifying Hardiman at trial.

Gillespie testified that she had been in Hardiman's company before the incident, that she witnessed the verbal confrontation, that she was seated directly across from the victim's vehicle at the time of the shooting, and that she saw Hardiman take out the weapon and fire it. Moreover, Gillespie expressed certainty in her pre-trial identification before any possible suggestive influence arose.

■ The trial court did not err. The events of Gillespie's pre-trial identification were fully explored on cross-examination. It was up to the jury to determine what weight to give Gillespie's in-court identification in light of her earlier lack of cooperation. *Harris v. State*, 619 N.E.2d 577 (Ind.1993).

### III. Claim of Discovery Abuse

Hardiman next asserts as error the admission of fingerprint evidence taken from the window of Terrell's vehicle. Police had possession of these fingerprints since the shooting, but did not give notice of a positive match until a week before trial. In preliminary hearings, defense counsel sought to exclude this evidence and, in the alternative, moved for a continuance. The trial court denied both requests.

■ Hardiman argues that this delay and withholding of evidence amounts to unfair surprise, gross misleading and bad faith. In opposition, the State contends that an earlier positive identification of the fingerprints was not possible due to com-

puter problems, and that Hardiman received notice immediately following the match.

 If a party's noncompliance with pre-trial discovery orders is grossly misleading or done in bad faith, then evidence may be excluded. *Nettles v. State,* 565 N.E.2d 1064 (Ind.1991). A trial court has broad discretion in ruling on issues of discovery and we will interfere only where an abuse of discretion is apparent. *Jenkins v. State,* 627 N.E.2d 789 (Ind.1993), *cert. denied,* 513 U.S. 812, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994).

Hardiman knew about the fingerprints for six months before trial, and he was aware of the State's difficulty in finding a positive match. Several days before trial, both the State and defense requested an individual comparison between the fingerprints taken from the scene and Hardiman. The State gave notice of a positive match on the same day a match was discovered.

Under these circumstances, it was within the discretion of the trial court to admit this evidence or grant a continuance.

### IV. Sufficiency of the Evidence

Hardiman's final argument is that, had the police report been admitted and Gillespie's testimony and the fingerprint evidence been excluded, there would have been insufficient evidence to support the jury's verdict.

 As we stated above, we conclude that the trial judge did the right thing on these matters. Moreover, the disputed evidence was not the sole indicator of Hardiman's guilt. Yet another eyewitness identified Hardiman as Terrell's assailant. Testimony from a single eyewitness is sufficient to sustain a conviction. *Coleman v. State,* 694 N.E.2d 269 (Ind.1998). In light of this evidence, we conclude that a reasonable jury could have found Hardiman guilty of murder.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ. concur.