Aaron G. FOWLER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0310–CR–930.

Court of Appeals of Indiana.

June 14, 2004.

Rehearing Denied Aug. 9, 2004.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Aaron Fowler appeals his conviction for domestic battery, a Class A misdemeanor. We affirm.

### Issue

The issue before us is whether the trial court erroneously allowed a police officer to recount statements made by the victim at the time of Fowler's arrest.

### Facts

On July 24, 2003, Indianapolis police officer Mark Decker received a dispatch to respond to a 911 domestic disturbance call. Officer Decker arrived at the residence approximately five minutes after receiving the dispatch. There, Officer Decker came into contact with Fowler and his wife, A.R. Officer Decker observed blood coming from A.R.'s nose and what appeared to be blood on her shirt and pants. Ten minutes after arriving at the residence, Officer Decker asked A.R. to tell him what had happened. A.R., who was moaning and crying, told Officer Decker and his partner that Fowler had punched her several times in the face.

Officer Decker arrested Fowler, and the State charged him with battery and domestic battery. A.R. appeared at the bench trial held on September 29, 2003, and identified pictures of her taken on July 24, 2003. However, she refused to testify that Fowler had battered her, exclaiming at one point, "I don't want to testify no more!" Tr. p. 7. The State then called Officer Decker, who recounted, over Fowler's objection, A.R.'s statements that Fowler had battered her. Fowler was convicted of domestic battery, and he now appeals.

### Analysis

Fowler contends that A.R.'s statements to Officer Decker did not fall under the definition of an "excited utterance" and, therefore, they were inadmissible hearsay. We review questions regarding the admissibility of evidence only for a manifest abuse of discretion resulting in an unfair trial. *Williams v. State*, 782 N.E.2d 1039, 1045 (Ind.Ct.App.2003), *trans. denied.*

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). However, the Evidence Rules provide an exception to this rule for "excited utterances." Indiana Evidence Rule 803(2) defines an "excited utterance" as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Indiana courts have distilled this rule into three distinct elements that the party seeking admission must prove: "(1) a startling event occurs; (2) a statement was made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event." *Williams,* 782 N.E.2d at 1046.

Here, Officer Decker testified that he arrived at A.R.'s residence approximately five minutes after receiving a domestic disturbance dispatch and that he had the opportunity to speak with A.R. no more than ten minutes after his arrival. Thus, about fifteen minutes elapsed between the time of the 911 call placed by A.R.'s friend reporting the incident and A.R.'s statements to Officer Decker that he related at trial. At the time A.R. made the statements implicating Fowler, she was still crying and bleeding from the nose, claimed to be in pain, and was having trouble catching her breath. It is reasonable to infer from this evidence that a startling event had occurred that resulted in A.R.'s bloody nose, that A.R. was still under the stress caused by that event, and that her statement related to the event. We concluded likewise under similar facts in *Gordon v. State,* 743 N.E.2d 376, 378 (Ind.Ct. App.2001), where we held the victim's statements to a police officer were excited utterances when the officer arrived on the scene minutes after receiving a 911 dispatch and spoke to the victim, who was "visibly shaking" and whose voice was "crackling." The trial court here did not abuse its discretion in concluding that A.R.'s statements to Officer Decker were excited utterances.

■ Although we have concluded that A.R.'s statements to Officer Decker fall under the excited utterance exception to the hearsay rule, that does not end our analysis today, given a recent and substantial change in Sixth Amendment jurispru-

dence announced by the United States Supreme Court while this case was pending, and which we have analyzed in another case decided today. We incorporate that analysis here:

Specifically, the Court held in March of this year that when the prosecution seeks to introduce a "testimonial" out-of-court statement into evidence against a criminal defendant, the Confrontation Clause of the Sixth Amendment requires two showings: (1) that the witness who made the statement is unavailable; and (2) that the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). In reaching this holding, the Court squarely criticized and overruled *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Roberts* had established the rule that hearsay statements made by an unavailable witness were admissible against a criminal defendant if the statement fell "within a firmly rooted hearsay exception" or otherwise bore "particularized guarantees of trustworthiness." *Id.* at 66, 100 S.Ct. at 2539.

By contrast, the *Crawford* opinion held that "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." *Crawford,* —— U.S. at ——, 124 S.Ct. at 1364. The Court then undertook an analysis of the state of the common law in 1791, when the Sixth Amendment was adopted, to support its conclusion that the Framers intended the Confrontation Clause to allow the admission of out-of-court "testimonial" statements by an unavailable witness only if the defendant had a prior opportunity for cross-examination. *Id.* at ——, 124 S.Ct. at 1365–

66. Thus, proper determination of whether an out-of-court statement is admissible against a criminal defendant is no longer solely governed by whether it falls within a recognized exception to the hearsay rule. Instead, if the statement was made in a situation where the defendant did not have an opportunity for cross-examination, the statement must be excluded if it is "testimonial." If a statement is "non-testimonial," its admission in a criminal trial is left "to regulation by hearsay law...." *Id.* at ——, 124 S.Ct. at 1370.

The majority in *Crawford* expressly declined to give a precise definition to the crucial word "testimonial." *Id.* at ——, 124 S.Ct. at 1374. It did offer some guidance, however. First, "testimonial" statements need not necessarily be ones given under oath; unsworn statements may also be "testimonial." *Id.* at ——, 124 S.Ct. at 1364–65. Second, the Court gave the following examples of "testimonial" statements:

> ex parte in-court testimony or its functional equivalent ... such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially ... extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions ... statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at ——, 124 S.Ct. at 1364 (citations omitted).

From these generalities, the Court extrapolated that statements made during a police "interrogation" would qualify as "testimonial" statements. *Id.* Again, however, the Court declined to precisely define "police interrogation," aside from noting that it used "the term 'interrogation' in its colloquial, rather than any technical legal, sense." *Id.* at ——, 124 S.Ct. at 1365 n. 4. It also found that the police questioning at issue in the case qualified as "interrogation" "under any conceivable definition" where the witness knowingly gave a recorded statement "in response to structured police questioning...." *Id.* The Court also compared police "interrogation" to official pre-trial examinations of witnesses by English magistrates or justices of the peace before England acquired a professional police force in the 19th century. *Id.* at ——, 124 S.Ct. at 1364–65. Finally, we note the Court dwelled at length upon the treason trial of Sir Walter Raleigh in 1603 and the out-of-court statements of Lord Cobham, Raleigh's alleged co-conspirator, contained in a letter and in an examination before the Privy Council, used to condemn Raleigh to death. *Id.* at ——, 124 S.Ct. at 1360.

.... It appears to us that the common denominator underlying the Supreme Court's discussion of what constitutes a "testimonial" statement is the official and formal quality of such a statement....

.... [W]e observe that the Supreme Court chose not to say that any police *questioning* of a witness would make any statement given in response thereto "testimonial"; rather, it expressly limited its holding to police "interrogation." We conclude this choice of words clearly indicates that police "interrogation" is not the same as, and is much narrower than, police "questioning." To the extent the Supreme Court said that it used the term "interrogation" "in its colloquial ... sense," we believe that reference

to a lay dictionary for a definition of "interrogation" is appropriate. *Id.* at ——, 124 S.Ct. at 1365 n. 4. "Interrogation" is defined in one common English dictionary as "To examine by questioning formally or officially." The American Heritage College Dictionary 711 (3d ed.2000). This is consistent with our prior observation that the common characteristic of all "testimonial" statements is the formality by which they are produced. We also believe that "interrogation" carries with it a connotation of an at least slightly adversarial setting. *See* Roget's Thesaurus II 556 (Expanded ed.1988) (listing as first definition of "interrogate" as "To question thoroughly and relentlessly to verify facts: *interrogate the captured soldier.*").

We thus hold that when police arrive at the scene of an incident in response to a request for assistance and begin informally questioning those nearby immediately thereafter in order to determine what has happened, statements given in response thereto are not "testimonial." Whatever else police "interrogation" might be, we do not believe that word applies to preliminary investigatory questions asked at the scene of a crime shortly after it has occurred. Such interaction with witnesses on the scene does not fit within a lay conception of police "interrogation," bolstered by television, as encompassing an "interview" in a room at the stationhouse. It also does not bear the hallmarks of an improper "inquisitorial practice." *See Crawford,* —— U.S. at ——, 124 S.Ct. at 1364. . . .

We further note that the very concept of an "excited utterance" is such that it is difficult to perceive how such a statement could ever be "testimonial." "The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an overpowering experience is likely to be truthful." *Hardiman v. State,* 726 N.E.2d 1201, 1204 (Ind.2000). To be admissible, an excited utterance "must be unrehearsed and made while still under the stress of excitement from the startling event." *Id.* "The heart of the inquiry is whether the declarants had the time for reflection and deliberation." *Id.* An unrehearsed statement made without reflection or deliberation, as required to be an "excited utterance," is not "testimonial" in that such a statement, by definition, has not been made in contemplation of its use in a future trial. *See Crawford,* —— U.S. at ——, 124 S.Ct. at 1364. . . .

*Hammon v. State,* 809 N.E.2d 945, 950–953, No. 52A02–0308–CR–693 (Ind. Ct. App. June 14, 2004) (footnotes omitted).

Guided by this analysis, we conclude, as we did in *Hammon,* that the statement A.R. gave to Officer Decker was not a "testimonial" statement. A.R.'s statement "was not given in a formal setting even remotely resembling an inquiry before King James I's Privy Council; it was not given during any type of pre-trial hearing or deposition; it was not contained within a 'formalized' document of any kind." *Id.* at 952. Additionally, Officer Decker's questioning of A.R. at the scene of the incident just minutes after it occurred does not qualify as classic, "police interrogation" as referred to in *Crawford.* Finally, the very nature of A.R.'s "excited utterance" to Officer Decker places it outside the realm of "testimonial" statements. We hold, given the nature of the police questioning in this case and the nature of the statement itself, that A.R.'s statement to Officer Decker was "non-testimonial" and admissible as evidence against Fowler, notwithstanding *Crawford* and Fowler's

apparent lack of an opportunity to cross-examine A.R. regarding her statement.

We would be remiss if we failed to observe that just before trial, Officer Decker apparently had threatened A.R. with a charge of filing a false police report if she refused to testify against Fowler. The prosecutor also asked the trial court to direct A.R. to answer his questions regarding whether Fowler had battered her, which the trial court refused to do. Given the psychological complexities of domestic violence cases, it is not at all clear to us that such an approach in trying to "encourage" a victim to testify is desirable. One recent scholarly article estimates that between eighty and ninety percent of domestic violence victims recant their accusations or refuse to cooperate with a prosecution. *See* Tom Lininger, *Evidentiary Issues in Federal Prosecutions of Violence Against Women,* 36 Ind. L.Rev. 687, 709 n. 76 (2003). The reasons why a victim might choose to recant or not cooperate are varied and complex, including a fear of additional violence by the abuser, a belief that the abuser will "change" if no prosecution occurs, and legitimate economic concerns if the abuser was the primary financial provider and is facing prison time. *See* Comment, *All States Should Adopt Spousal Privilege Exception Statutes,* 55 J. Mo. B. 249, 249 (1999). A domestic violence victim should not be placed in the situation of being intimidated not only by the aggressor, but also by the State and its representatives. Although we understand the frustration experienced by the State when a victim refuses to testify, we note the large number of cases from this court and our supreme court delineating the excited utterance exception to the hearsay rule, the sufficiency of such evidence to support a domestic violence conviction, our presumption that a police officer will interview a victim shortly after a domestic violence incident, and our belief announced today that *Crawford v. Washington* should not substantially curtail the admission of excited utterances in these types of cases.

## Conclusion

The trial court did not abuse its discretion in admitting Officer Decker's testimony relating A.R.'s statements made following the battery, notwithstanding the Supreme Court's recent decision in *Crawford v. Washington.* We affirm Fowler's conviction.

Affirmed.

MATHIAS, J., concurs.

CRONE, J., concurs in result with separate opinion.

CRONE, Judge, concurring in result.

I agree with the majority's conclusion that A.R.'s statements to Officer Decker fall under the excited utterance exception to the hearsay rule and that the trial court did not abuse its discretion in admitting those statements. Nevertheless, I respectfully disagree with the majority's determination that the United States Supreme Court's recent decision in *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), applies to the facts of this case.

Instead, I believe that we should follow our supreme court's even more recent analysis in *Clark v. State,* 808 N.E.2d 1183 (Ind. 2004). In *Clark,* a murder witness was interviewed under oath by the prosecutor before the defendant was arrested, and the trial court admitted the transcript of the interview at trial. In determining the transcript's admissibility, Justice Boehm concluded that *Crawford* was inapplicable because the witness had testified at trial. *See id.,* at 1189 n. 2 (stating that the United States Supreme Court "specifically noted that its holding does not alter the rule that 'when the declarant appears

for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements' ") (quoting *Crawford,* —— U.S. at —— n. 9, 124 S.Ct. at 1369 n. 9). Here, although A.R. could be characterized as uncooperative, she testified at trial and could have been recalled for cross-examination regarding the statements she made to Officer Decker at the scene of the crime. As such, Fowler was not denied an opportunity to confront A.R. *See id.,* at 1189–90 ("Clark argues that because Watson's statement was admitted after Watson left the stand, Clark had no opportunity to cross-examine Watson, but he gives no reason why he could not have recalled Watson. He has not established a violation of his right to cross-examine."); *see also Kielblock v. State,* 627 N.E.2d 816, 821 (Ind.Ct.App.1994) (finding no abuse of discretion in admission of audiotape and transcript of victim interview where victim had testified during State's case in chief and " 'was still under subpoena and was subject to being called to testify' ") (citation omitted), *trans. denied.*

The fallout from Justice Scalia's "clarification" of the Confrontation Clause in *Crawford* will reverberate through the evidentiary landscape for some time to come and will create countless dilemmas for trial and appellate courts,[1] but I do not believe that we are necessarily faced with that dilemma here. For that reason, I respectfully concur in result.

---

**1.** One such dilemma is that a "testimonial"/"non-testimonial" distinction based on the formality of police questioning may result in the exclusion of statements previously considered to be highly reliable (such as the sworn statements given in *Clark* ) and the admission of statements that traditionally have been deemed less trustworthy.