In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00118-CR
______________________________


JOSEPH MICHAEL BARKER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 294th Judicial District Court
Wood County, Texas
Trial Court No. 13,841-94


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Joseph Michael Barker has appealed two cases to this Court, both of which are from
final convictions in 1994. Initially, his counsel did not timely appeal from either conviction,
and in 2003, the Texas Court of Criminal Appeals granted an out-of-time appeal. These
appeals are each from pleas of guilty.
          The appeal in this case is from the conviction in cause number 13,841-94.


 Barker
pled guilty to aggravated sexual assault, with a deadly weapon finding, without a plea
agreement. The court sentenced him to forty years' imprisonment and to pay $1,576.30
in restitution. 
          Barker raises three contentions of error. He contends that the trial court erred by
failing to grant his pretrial motion to dismiss the indictment after discovering that a member
of the grand jury which had indicted him was a convicted felon; that his plea of guilty was
not voluntary, and thus the court erred by denying his motion for new trial; and that the
court erred by accepting his plea, in the face of evidence that he was mentally ill, without
ordering a mental competency hearing.
          We first address Barker's complaint regarding the grand jury. We addressed this
same issue in our 1995 opinion concerning this same grand juror in Caraway v. State, 911
S.W.2d 400 (Tex. App.—Texarkana 1995, no pet.). We acknowledged that a person who
has been convicted of a felony may not serve as a grand juror. Tex. Code Crim. Proc.
Ann. art. 19.08 (Vernon Supp. 2004–2005). However, a challenge to the array of jurors
or to any person presented for grand jury service must be made before the grand jury is
empaneled. In no other way may objections to the qualifications and legality of the grand
jury be heard. Tex. Code Crim. Proc. Ann. art. 19.27 (Vernon 1977).
          If the defendant does not object to a defect of form


 or substance in an indictment
before trial on the merits commences, he or she waives the defect and may not complain
of it on appeal or in any other postconviction proceeding. Tex. Code Crim. Proc. Ann. art.
1.14(b) (Vernon Supp. 2004–2005). As in Caraway, in this case Barker waived any defect
because he did not timely object. Caraway, 911 S.W.2d at 401. The contention of error
is overruled.
          Barker next contends the trial court erred in denying his September 27, 1994,
motion for new trial because his pleas of guilty were not knowingly or intelligently entered. 
          The granting or denying of a motion for new trial lies within the discretion of the trial
court. We do not substitute our judgment for that of the trial court, but rather decide
whether the trial court's decision was arbitrary or unreasonable. Lewis v. State, 911
S.W.2d 1, 7 (Tex. Crim. App. 1995); State v. Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim.
App. 1993). 
          In reviewing a guilty plea, we recognize that a guilty plea must be freely, knowingly,
and voluntarily made. Brady v. United States, 397 U.S. 742, 748 (1970); Mitschke v. State,
129 S.W.3d 130, 132 (Tex. Crim. App. 2004). 
          In this case, Barker contends his plea was involuntary because he was in an
alcohol-induced blackout at the time of the act and therefore had no knowledge of whether
he had actually committed the crime at all. He so informed the judge in open court. Barker
also stated that, after talking to his counsel and reviewing the evidence, he believed
himself to be guilty and was thus pleading guilty to the charge. 
          As pointed out by appellate counsel, if evidence reasonably and fairly raises an
issue about the innocence of a defendant who has pled guilty, it is the duty of the trial court
to withdraw the plea and enter a not guilty plea if the defendant fails to do so himself or
herself. Holland v. State, 761 S.W.2d 307, 322 (Tex. Crim. App. 1988); Griffin v. State,
703 S.W.2d 193, 195 (Tex. Crim. App. 1986); Williams v. State, 10 S.W.3d 788, 789 (Tex.
App.—Waco 2000, pet. ref'd). The Texas Court of Criminal Appeals has, however,
recently reiterated that due process of law is not denied by a conviction based on a plea
of guilty that is accompanied by "a strong factual basis for the plea demonstrated by the
State and [a defendant]'s clearly expressed desire to enter it despite his professed belief
in his innocence." Mendez v. State, 138 S.W.3d 334, 344 (Tex. Crim. App. 2004). 
          In this case, the State provided proof Barker had committed the offense, and there
is no reference to any evidence that would have shown the trial court that Barker was
innocent of the charges. Even if Barker did not remember committing the offense, the
combination of the State's proof and Barker's insistence that he be allowed to plead guilty
is sufficient to provide the trial court with a legitimate reason to overrule Barker's motion
for new trial. The court thus did not abuse its discretion by overruling the motion. The
point of error is overruled.
          Barker next contends the trial court erred in accepting his plea of guilty despite
being aware of mental illness—and without sua sponte ordering a mental competency
hearing. The controlling statutory law has been rewritten recently, and the new
subdivisions are effective for defendants against whom incompetency proceedings are
initiated on or after January 1, 2004. Obviously, the former law applies to this 1994
conviction.
          A person is presumed to be competent to stand trial unless proven incompetent. 
Tex. Code Crim. Proc. Ann. art. 46B.003(b) (Vernon Supp. 2004–2005) (formerly Article
46.02, § 1A(b)). A person is incompetent to stand trial if that person lacks "sufficient
present ability to consult with the person's lawyer with a reasonable degree of rational
understanding; or . . . a rational as well as factual understanding of the proceedings against
the person." Tex. Code Crim. Proc. Ann. art. 46B.003B(a)(1),(2) (Vernon Supp.
2004–2005). 
          Former Article 46.02, § 2(b) provided:
If during the trial evidence of the defendant's incompetency is brought to the
attention of the court from any source, the court must conduct a hearing out
of the presence of the jury to determine whether or not there is evidence to
support a finding of incompetency to stand trial.

Tex. Code Crim. Proc. Ann. art. 46.02, § 2(b) (Vernon 1979), repealed by Act of Apr. 30,
2003, 78th Leg., R.S., ch. 35, § 15, 2003 Tex. Gen. Laws 57, 72.
          Under this provision, when evidence of incompetency of the defendant is offered
during the trial that raises a bona fide doubt in the trial court's mind concerning
competency, the trial court must conduct an inquiry referred to as a "Section 2(b) inquiry"
to determine whether there is evidence to support a finding of incompetency to stand trial. 
Generally, a "bona fide" doubt is raised only when the evidence indicates recent severe
mental illness, at least moderate mental retardation, or truly bizarre acts by the defendant. 
Alcott v. State, 51 S.W.3d 596, 599 (Tex. Crim. App. 2001); Collier v. State, 959 S.W.2d
621, 625 (Tex. Crim. App. 1997). 
          The Texas Court of Criminal Appeals delineated the steps in this situation as
follows:
1)if a competency issue is raised by the defendant, any party, or the
court; and 
 
2)evidence of incompetency is brought to the attention of the trial court
by the defendant, any party, or the court;
 
3)of the type to raise a bona fide doubt in the judge's mind regarding the
defendant's competency to stand trial; then
 
4)the judge must conduct a Section 2 "competency inquiry" to
determine if there is some evidence sufficient to support a finding of
incompetence, and if there is,
 
5)the judge must impanel a jury for a Section 4 "competency hearing."

McDaniel v. State, 98 S.W.3d 704, 710–11 (Tex. Crim. App. 2003). The requirements of
each step must be fulfilled before moving on to the next. Id. 
          In this case, Barker contends his lack of competence was shown by information
provided in forms presented to the court and by his discussions with the court. The
information to which he directs us reflects his history of alcoholic blackouts and his
treatment by a psychiatrist (which he testified had ended before the date of the offense or
his being placed in jail). He also testified, in response to specific questioning, that he
believed himself to be "dry, clean, sober and thinking clear," and his attorney stated he had
been able to communicate with his client. 
          A trial court's decision whether to conduct a competency hearing is reviewed for
abuse of discretion. Reed v. State, 112 S.W.3d 706, 710 (Tex. App.—Houston [14th Dist.]
2003, pet. ref'd); Grider v. State, 69 S.W.3d 681 (Tex. App.—Texarkana 2002, no pet.). 
Although the record contains some indication of a problem at a time in the past, we cannot
say that evidence was "of the type to raise a bona fide doubt in the judge's mind regarding
the defendant's competency to stand trial" at the time Barker entered his plea or while he
was in the process of communicating with his attorney about his defense. Accordingly, the
trial court did not err by failing to conduct a competency hearing on its own motion. The
point of error is overruled.
          We affirm the judgment.
 
                                                                Donald R. Ross
                                                                Justice

Date Submitted:      September 14, 2004
Date Decided:         October 15, 2004

Do Not Publish



60;  After Crawford, the Confrontation Clause Requires Exclusion of Testimonial
Statements Unless There Has Been a Prior Opportunity for Cross-Examination

            The Sixth Amendment provides, "in all criminal prosecutions, the accused shall enjoy the
right to . . . be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth
Amendment's right of confrontation is a fundamental right and is applicable to the States by virtue
of the Fourteenth Amendment." Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991);
McClenton v. State, No. 10-03-00099-CR, 2005 Tex. App. LEXIS 3086, at *7 (Tex. App.—Waco
Apr. 20, 2005, no pet.).
            Until recently, the application of the Confrontation Clause to an out-of-court statement was
governed by Ohio v. Roberts, 448 U.S. 56 (1980), overruled in part, Crawford, 541 U.S. 36.


 Under
Roberts, the statement of an unavailable witness was admissible if it had sufficient "indicia of
reliability." Roberts, 448 U.S. at 66. Reliability could be inferred if the evidence fell within a firmly
rooted hearsay exception. Id.
            In Crawford, the United States Supreme Court set out a new test for challenges to out-of-court statements based on the Confrontation Clause. Crawford held that the Confrontation Clause
was a procedural guarantee which commands that "reliability be assessed in a particular manner: 
by testing in the crucible of cross-examination." Crawford, 541 U.S. at 61.


 The Court held that,
"where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law
required: unavailability [of the witness] and a prior opportunity for cross-examination." Id. at 68. 
Crawford reasoned that the Confrontation Clause was intended to prevent the historic practice of
using ex parte examinations as evidence against the accused. Id. The Court rejected the view that
the Confrontation Clause applies only to in-court testimony and that the introduction of out-of-court
testimonial statements depended on the laws of evidence. Id. at 61. The Court determined that the
framers of the Constitution would not have allowed admission of testimonial statements of a witness
who did not appear at trial unless he or she was unavailable to testify and the defendant had a prior
opportunity for cross-examination. Id. at 68.












 
            (b)       "Testimonial" Statements Include at Least Prior Testimony, Police Interrogations,
and the Like
            Though Crawford does not definitively define "testimonial,"


 it does give some suggestions
as to its meaning. The Court held that a statement, which was "knowingly given in response to
structured police questioning," was testimonial. Id. at 53 n.4. The Court noted:
"Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the
purpose of establishing or proving some fact." 1 N. Webster, An American
Dictionary of the English Language (1828). An accuser who makes a formal
statement to government officers bears testimony in a sense that a person who makes
a casual remark to an acquaintance does not. The constitutional text, like the history
underlying the common-law right of confrontation, thus reflects an especially acute
concern with a specific type of out-of-court statement.

Id. at 51. Testimonial statements are not limited to statements given under oath. See id. at 52. In
addition, the Court noted several proposed definitions for testimonial:
Various formulations of this core class of "testimonial" statements exist: "ex parte
in-court testimony or its functional equivalent--that is, material such as affidavits,
custodial examinations, prior testimony that the defendant was unable to
cross-examine, or similar pretrial statements that declarants would reasonably expect
to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements . . . 
contained in formalized testimonial materials, such as affidavits, depositions, prior
testimony, or confessions," White v. Illinois, 502 U.S. 346, 365, 116 L.Ed.2d 848,
112 S.Ct. 736 (1992) (Thomas, J., joined by Scalia, J., concurring in part and
concurring in judgment); "statements that were made under circumstances which
would lead an objective witness reasonably to believe that the statement would be
available for use at a later trial," Brief for National Association of Criminal Defense
Lawyers et al. as Amici Curiae 3.
Crawford, 541 U.S. at 51–52. The first two proposed formulations relate to the formal nature of the
interaction during which the statement was made. They focus on the formal quality of the statement
and its similarity to ex parte in-court testimony. The third proposed formulation focuses on the
reasonable expectations of an objective witness.
            Yet the Court refused to adopt any of the proposed formulations as a core class of
"testimonial" statements. The Court noted that the term "testimonial" includes at a minimum "prior
testimony at a preliminary hearing, before a grand jury, or at a former trial" and to "police
interrogations." Id. at 68. In determining whether a statement is "testimonial," courts have examined
the formal nature of the interaction, the intent of the declarant, or some combination of the two
factors. We will examine each of these factors in turn.
            Formality. The text of Crawford focuses extensively on the formal nature or quality of the
interaction. The Court held "the principal evil at which the Confrontation Clause was directed was
the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as
evidence against the accused." Id. at 50. The Court analyzed at length historical ex parte
examination practices and the original intent of the Confrontation Clause. As the Court emphasized,
the Confrontation Clause "is a procedural rather than a substantive guarantee." Id. at 61. Thus, if
the nature of the interaction possesses a sufficiently formal quality such that it is the functional
equivalent of ex parte in-court testimony, the statement is testimonial.
            Some other courts have focused on the formal nature of the interaction. See Lee v. State, 143
S.W.3d 565, 570 (Tex. App.—Dallas 2004, pet. ref'd); see also Ruth v. State, No. 14-03-01158-CR,
2005 Tex. App. LEXIS 4729, at *16–17 (Tex. App.—Houston [14th Dist.] June 21, 2005, no pet.
h.) (not designated for publication) (whether statement is testimonial turns on procedure used to
obtain it, not its contents). In Lee, the Dallas Court of Appeals held that an out-of-court statement
of a codefendant made during a roadside stop, after he had been arrested and in response to questions
of an officer, was testimonial. See Lee, 143 S.W.3d at 570. The court stated, "Although the
statement in question was not audible on the recording, that does not alter the formality of the setting
that was intended to record testimony for the prosecution of the case being investigated." Id. The
State argues the Dallas Court of Appeals erred in focusing on the intent of the police officer in
recording the statement. We disagree that the Dallas Court of Appeals erred in focusing on the intent
of the police officer. The intent of the police officer is relevant because it is a strong indication that
the interaction was the functional equivalent of a police interrogation. See id. Though the Lee
interview may have lacked some of the formality of the interrogation addressed in Crawford, the
Dallas Court of Appeals apparently concluded that formality in an interaction could be sufficiently
similar to a formal police interrogation to make the statement testimonial.
            The Indiana Court of Appeals has held that whether a statement is testimonial revolved
around the official and formal quality of the statement. See Fowler, 809 N.E.2d at 963.
            Declarant's Intent. Another approach of determining whether a statement is testimonial
involves examining the intent of the declarant. The intent could be examined from either an
objective or subjective point of view. While the proposed formulation noted by the Supreme Court
views the intent of the declarant from an objective perspective, i.e., whether an objective witness
would reasonably believe that the statement would be available for use at a later trial; the intent
could also be examined from the subjective view of the declarant. While the Supreme Court in
Crawford did not specifically adopt the subjective intent of the declarant in defining testimonial, it
held that a statement "knowingly given in response to structured police questioning" was testimonial
under any conceivable definition of interrogation. Crawford, 541 U.S. at 53. This statement
indicates that the subjective intent of the declarant may be relevant in determining if a statement is
testimonial. This Court has held that co-conspirator statements made to another co-conspirator
"were not made in a setting where it might reasonably be expected the statements would be used in
judicial proceedings." See Wiggins, 152 S.W.3d at 659; cf. Woods v. State, 152 S.W.3d 105, 114
(Tex. Crim. App. 2004) (casual remarks spontaneously made to acquaintances are nontestimonial).
            Some courts have indicated that the subjective intent of the declarant is also relevant. Key
v. State, No. 12-04-00030-CR, 2005 Tex. App. LEXIS 1573, at *13 (Tex. App.—Tyler Feb. 28,
2005, no pet.); Fowler, 809 N.E.2d at 965. See Chris Hutton, Sir Walter Raleigh Revived: The
Supreme Court Revamps Two Decades of Confrontation Clause Precedent in Crawford v.
Washington, 50 S.D. L. Rev. 41, 58 (suggesting "testimonial" includes both objective and subjective
aspects).
            Hybrid Formulations. Alternatively, "testimonial" could encompass some aspects of both
the formal nature of the interaction and intent of the declarant formulations. As discussed below,
we believe that Fifita's statement qualifies as testimonial under either formulation. Therefore, we
decline to determine whether "testimonial" refers to the formal nature of the interaction, the intent
of the declarant, or some combination of the two approaches at this time.
            (c)       An Excited Utterance Is Not Necessarily Nontestimonial
            The State argues that, as a class, excited utterances are not testimonial. It argues that excited
utterances are not generally made in formal settings, for the purpose of preparing a criminal case for
prosecution, and are frequently collected at the scene of the crime. The State further argues that an
excited utterance cannot be testimonial since the declarant is dominated by the emotions, excitement,
fear, or pain of the exciting event.
            In support of its argument, the State cites Fowler, 809 N.E.2d 960; Hammon v. State, 809
N.E.2d 945 (Ind. Ct. App. 2004), trans. granted; People v. Cage, 15 Cal. Rptr. 3d 846 (Cal. Ct. App.
2004), review granted and superseded, 99 P.3d 2 (Cal. 2004). The Indiana Court of Appeals stated:
We further note that the very concept of an "excited utterance" is such that it is
difficult to perceive how such a statement could ever be "testimonial." "The
underlying rationale of the excited utterance exception is that such a declaration from
one who has recently suffered an overpowering experience is likely to be truthful."
Hardiman v. State, 726 N.E.2d 1201, 1204 (Ind. 2000). To be admissible, an excited
utterance "must be unrehearsed and made while still under the stress of excitement
from the startling event." Id. "The heart of the inquiry is whether the declarants had
the time for reflection and deliberation." Id. An unrehearsed statement made without
reflection or deliberation, as required to be an "excited utterance," is not "testimonial"
in that such a statement, by definition, has not been made in contemplation of its use
in a future trial. See Crawford, ___ U.S. at ___, 124 S. Ct. at 1364 . . . .

Hammon, 809 N.E.2d at 952–53; see Fowler, 809 N.E.2d at 964. We note that, in Fowler, the court
also based its decision on its conclusion that the questioning did not constitute a classic "police
interrogation." Fowler, 809 N.E.2d at 964. 
            At least one Texas court of appeals appears to have been persuaded by the reasoning of the
Indiana Court of Appeals. The Tyler Court of Appeals has stated "we are persuaded that the
underlying rationale of an excited utterance supports a determination that it is not testimonial in
nature." Key, 2005 Tex. App. LEXIS 1573, at *13. In making this determination, the Tyler Court
of Appeals considered whether the statements were made with the reasonable expectation that they
would be used in court. Id. at *12. Because an excited utterance is made by a declarant who has not
had time for reflection or deliberation, the court reasoned that the declarant of such a statement did
not contemplate its use at a future trial. Id. at *13.
            The Fourteenth District Court of Appeals has recently rejected the notion that all excited
utterances are nontestimonial. Spencer v. State, 162 S.W.3d 877, at *9–12 (Tex. App.—Houston
[14th Dist.] 2005, no pet.). Although the court held that a declarant's state of excitement can be
considered when determining whether his or her statement is testimonial, the Fourteenth District
refused to establish a bright-line rule that excited utterances can never be testimonial. Id. at *12. 
In addition, the Austin Court of Appeals has stated that the determination of whether a statement is
testimonial does not turn on whether it qualifies under a hearsay exception. See Davis v. State, No.
03-04-00014-CR, 2005 Tex. App. LEXIS 3773, at *20–29 (Tex. App.—Austin May 19, 2005, no
pet.) (extensive analysis concluding excited utterances are not necessarily nontestimonial); see also
Scott v. State, No. 03-03-00109-CR, 2005 Tex. App. LEXIS 2168, at *49 (Tex. App.—Austin Mar.
24, 2005, no pet.) (whether statement is testimonial does not turn on whether it qualifies as self-inculpatory within meaning of hearsay exception). We agree with the reasoning of the Austin Court
of Appeals and the Fourteenth District Court of Appeals. Each statement must be analyzed
individually independent of whether it is an excited utterance under the Texas Rules of Evidence.
            The Crawford decision specifically excludes a statement's exemption based on the Rules of
Evidence. While the Supreme Court noted that "not all hearsay implicates the Sixth Amendment's
core concerns," it also opined that "leaving the regulation of the confrontation out-of-court
statements to the law of evidence would render the Confrontation Clause powerless to prevent even
the most flagrant inquisitorial practices." Crawford, 541 U.S. at 51. If we held that all excited
utterances were nontestimonial, we would be leaving the regulation of the Confrontation Clause to
the Rules of Evidence, which is specifically prohibited by Crawford.


 The mere fact that a
statement may be an excited utterance does not satisfy the Confrontation Clause concerns espoused
in Crawford. Under Crawford, whether the introduction of a statement violates the Confrontation
Clause is entirely independent of the Texas Rules of Evidence. "The threshold question imposed by
Crawford is whether the proffered out-of-court statement is 'testimonial' in nature." Brooks v. State,
132 S.W.3d 702, 707 (Tex. App.—Dallas 2004, pet. ref'd); see Crawford, 541 U.S. at 36. While
many excited utterances will be nontestimonial, we are unwilling to conclude that a statement is not
testimonial simply because it is an excited utterance.
 
            (d)       The Videotape Was Testimonial and Therefore Was Erroneously Admitted
            Whether the right of confrontation has been violated should be reviewed de novo.


 We note
that the State argues that this appeal involves an evidentiary ruling, which is reviewed for an abuse
of discretion. The State cites Wilson in urging us to review the trial court's ruling for an abuse of
discretion. Wilson, 151 S.W.3d at 699. But Wilson held that the standard for reviewing a potential
Confrontation Clause violation was de novo. Id. at 697. Only after the statements had been
determined to be nontestimonial did the court review the admission of the statement under an abuse
of discretion standard. Id. at 699. We will review the trial court's determination that the statement
is nontestimonial de novo.
            Under the circumstances of this case, Fifita's statement, that was recorded on videotape, is
testimonial. At the time the statement was made, Moore had reported to the police that Fifita had
assaulted him. The police officer informed Fifita of her Miranda rights before the interview, and
the statements of Fifita and her son were made in response to questioning by the police officer. At
trial, the State used the resulting videotape as the functional equivalent of in-court testimony.
            The formal nature of the interaction indicates that the statement is testimonial. Although the
interview was conducted at Fifita's residence, the videotaped interview is, or is similar to, a police
interrogation. The Supreme Court explicitly held that "statements taken by police officers in the
course of interrogations" are clearly testimonial. Crawford, 541 U.S. at 68. Crawford asserted that
it used "the term 'interrogation' in its colloquial, rather than any technical legal, sense." Id. at 53 n.4.
"Colloquial" means "used in or characteristic of familiar and informal conversation." Merriam
Webster's Collegiate Dictionary (10th ed. 1993). Even if the interview was not a police
interrogation in the technical legal sense, it qualifies in the colloquial sense. Moore had been
previously interviewed after he reported to the police that Fifita had assaulted him. Fifita was read
her rights and asked several questions concerning the events of that morning. She was aware that
she was being videotaped and that evidence was being collected. Even though the interview was not
as formal as many police interrogations, the purpose of the interview was the same as a typical police
interrogation—to record testimony for the prosecution of the offense being investigated. The
formality of the videotaped statement greatly favors a finding of the statement being testimonial.
            Further, both the subjective intent of the declarant and the reasonable expectations of an
objective witness indicate that the statement is testimonial. Fifita understood that the statement
could be used to investigate or prosecute the offense and was conscious that she was bearing witness. 
The State argues that an excited utterance cannot be given solemnly or with the purpose of
establishing a fact in court. We disagree. Even if a declarant is still under the influence of the
traumatic event and has not had sufficient time to reflect on the incident, the declarant can still
understand, under certain circumstances, that the statement will be used for prosecution. In this case,
Fifita stated that she understood her Miranda rights. Fifita clearly understood that the videotape was
being taken to preserve evidence for later use. Further, an objective witness could reasonably expect
the videotaped statement to be available for use at a trial.
            Texas cases have held that statements similar to the statement at issue were testimonial.


 
Both the formal nature of the interaction and the intent of the declarant indicate that the statement
was testimonial. We conclude Fifita's recorded out-of-court statement made in response to the
questioning of the police officer, especially after she had been warned of her rights under Miranda,
are testimonial.
            In addition, we believe the brief statement given by Fifita's son is testimonial as well. While
Fifita was being interviewed on the videotape, Fifita called her son in from an adjoining room at the
police officer's request. Fifita's son stated that he saw Moore grab his mother around the neck,
appear to choke her, and throw her against the wall. While the officer did not read the son his rights,
the police officer did introduce himself and inform the son that he was investigating the "incident"
which occurred that morning. The formal nature of the statement indicates it was testimonial. The
interview was the functional equivalent of in-court testimony. The son was aware that he was being
videotaped and that evidence was being collected. The purpose of the interview was to memorialize
the evidence and preserve it for trial. Further, an objective witness would reasonably believe that
the statement would be available for use later at trial. The police officer informed the son that he
was investigating the "incident," and the son could observe the statement was being videotaped. 
Both the formal nature of the interaction and the intent of the declarant indicate that the statement
was testimonial. We conclude Fifita's son's recorded, out-of-court statement made in response to the
questioning of the police officer, after being informed the officer was investigating "the incident,"
was testimonial. Therefore, admitting the videotape was error.
            (e)       Admitting the Videotape Was Harmful
            When a defendant's rights under the Confrontation Clause are violated, we must reverse the
trial court's judgment due to constitutional error unless it is determined beyond a reasonable doubt
that the error did not contribute to the appellant's conviction. Tex. R. App. P. 44.2(a); McClenton,
2005 Tex. App. LEXIS 3086, at *15–16; Wall, 143 S.W.3d at 851.
            In determining if the error contributed to the appellant's conviction, we apply the factors
enunciated by the Supreme Court in Delaware v. Van Arsdall. McClenton, 2005 Tex. App. LEXIS
3086  at  *16;  see  Delaware  v.  Van  Arsdall,  475  U.S.  673,  686–87  (1986).  These  factors
include  (1)  the  importance  of  the  witness'  testimony,  (2)  whether  the  testimony  was
cumulative, (3) the presence or absence of evidence corroborating or contradicting the witness'
testimony, (4) the extent cross-examination was permitted, and (5) the overall strength of the State's
case. McClenton, 2005 Tex. App. LEXIS 3086, at *16; see Van Arsdall, 475 U.S. at 684. If, after
considering the above factors, we cannot conclude beyond a reasonable doubt that the error did not
contribute to the appellant's conviction, we must reverse the trial court's judgment. McClenton, 2005
Tex. App. LEXIS 3086, at *16. Our inquiry focuses on whether the complained-of error contributed
to the jury's verdict—regardless of the sufficiency of the legally admitted evidence. Id.; Bratton v.
State, 156 S.W.3d 689, 693 (Tex. App.—Dallas 2005, no pet.).
            The Van Arsdall factors indicate that the error did contribute to Moore's conviction. The
videotape was not merely cumulative of other testimony and was of great importance. The videotape
contained the only direct evidence that Moore assaulted Fifita. Moore had no opportunity for cross-examination. Further, the State's case was weak without the videotape. While Fifita's injuries did
partially corroborate the statement, the corroboration is insufficient to conclude beyond a reasonable
doubt that the error in admitting the videotape did not contribute to the conviction.



            We sustain Moore's first point of error.



(2) Denying Moore's Motion for Directed Verdict Was Proper
            In his second point of error, Moore alleges the trial court erred in denying his motion for a
directed verdict. A point of error complaining about a trial court's failure to grant a motion for
directed verdict is a challenge to the legal sufficiency of the evidence. Williams v. State, 937 S.W.2d
479, 482 (Tex. Crim. App. 1996); Smith v. State, 109 S.W.3d 80, 81 (Tex. App.—Texarkana 2003,
no pet.). In our review of the legal sufficiency of the evidence, we employ the standards set forth
in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This requires us to view the relevant evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the record, both
direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999); Glover v. State, 102 S.W.3d 754, 759 (Tex. App.—Texarkana 2002, pet.
ref'd).
            Blackburn testified to some of what Fifita told him the morning of the assault, but he did not
recount any allegation from Fifita that Moore assaulted her. Further, we are required to consider the
videotape as part of the evidence for this review, even though it should not have been admitted. 
Even erroneously admitted evidence must be considered when addressing a challenge to the
sufficiency of the evidence. Glover, 102 S.W.3d at 759. Both Fifita and her son describe on the
videotape the assault and identify Moore as the person who committed the assault. In addition, the
videotape reveals Fifita's injuries. Because we are to consider even erroneously admitted evidence
in determining if the evidence is sufficient, the evidence is legally sufficient. The trial court did not
err in denying the motion for directed verdict. We overrule Moore's second point of error.
            We reverse the judgment of the trial court and remand this case for a new trial.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 24, 2005
Date Decided:             July 26, 2005

Publish