**Randall Bruce SPENCER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–04–00059–CR.

Court of Appeals of Texas, Houston (14th Dist.).

April 28, 2005.

David Cunningham, Houston, for appellant.

Eric Kugler, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant Randall Bruce Spencer appeals from his conviction for the domestic assault of Michelle O'Mealey. O'Mealey did not testify at trial, but the trial court allowed two peace officers who responded to the scene after O'Mealey called 911 to testify that O'Mealey told them appellant had hit her. Appellant contends this ruling deprived him of his right to confront witnesses against him under the Sixth and Fourteenth Amendments to the United States Constitution. Because we conclude that O'Mealey's statements to the officers were not "testimonial," we affirm.

In the early morning hours of September 5, 2003, Deputies John Igoe and Greg Thomason responded to a 911 hang-up call from a residence in Harris County. When they arrived at the scene less than three minutes later, they found O'Mealey standing in her front yard holding her nine-month old baby. She had red marks on her left cheek and blood coming from her nose and on her clothing. Her eyes were red and puffy as if she had been crying, and she was shaking and visibly distraught. She told the deputies that she was in bed with her baby when appellant came in and laid down next to her. He then jumped on top of her and the baby and started punching her in the face with his fist. She also told the deputies that appellant had been drinking earlier in the day.

After establishing that appellant was no longer on the premises, the deputies accompanied O'Mealey back into the residence, and she made a written statement. After O'Mealey refused any emergency treatment for her injuries, the deputies left. Shortly after, another 911 call came in from the same address. The deputies returned and found appellant at the scene. He was arrested and charged with assault.

As often happens in domestic violence cases, the victim, O'Mealey, did not testify at trial.[1] The State put on its case through Deputies Igoe and Thomason, who testified as to what they saw when they arrived at the scene and what O'Mealey told them before they accompanied her inside the residence and she gave a written statement. Appellant objected to admission of this evidence, arguing that it was hearsay and deprived him of his right to confront his accuser. The trial court admitted O'Mealey's initial statements to the officers under the excited utterance exception to the hearsay rule. On appeal, appellant does not challenge the trial court's determination that O'Mealey's statements were excited utterances. Rather, he contends that even if they were excited utterances, their admission violated his right of confrontation as set forth in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which was decided shortly after the case was tried.

In *Crawford,* the petitioner, Crawford, stabbed a man who allegedly tried to rape his wife. *Id.* at 38, 124 S.Ct. 1354. His wife gave a tape-recorded statement to the police describing the stabbing. *Id.* She did not testify at trial, based on spousal privilege. *Id.* at 40, 124 S.Ct. 1354. Crawford

---

1. As the Indiana Court of Appeals recently noted, "[o]ne recent scholarly article estimates that between eighty and ninety percent of domestic violence victims recant their accusations or refuse to cooperate with a prose- cution." *Fowler v. State,* 809 N.E.2d 960, 965 (Ind.Ct.App.2004) (citing Tom Lininger, *Evidentiary Issues in Federal Prosecutions of Violence Against Women,* 36 IND. L.REV. 687, 709 n. 76 (2003)).

claimed self-defense, and the state sought to use his wife's statement as evidence refuting his self-defense theory. *Id.* Crawford objected, contending that admitting his wife's statement to the police violated his Sixth Amendment right to be " 'confronted with the witnesses against him.' " *Id.* (quoting U.S. CONST. amend. VI).

The trial court admitted the evidence under the rule of *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which allowed admission of an unavailable witness's statement against a criminal defendant if the statement bears "adequate indicia of reliability." *Id.* at 66, 100 S.Ct. 2531 (internal quotation marks omitted). After thoroughly analyzing the history of the Confrontation Clause and the evils it was designed to prohibit, the Court concluded that the *Roberts* test strays from the original meaning of the Confrontation Clause. *Crawford,* 541 U.S. at 42–51, 124 S.Ct. 1354. Therefore, the Court in *Crawford* established a new framework for analyzing a Confrontation Clause claim. If the statement at issue is "testimonial," it is inadmissible unless the declarant is unavailable and the accused has had a prior opportunity for cross-examination. *Id.* at 53–54, 124 S.Ct. 1354. Thus, the threshold issue under *Crawford* is whether the statement to be admitted is testimonial.

The Court did not define "testimonial," but it noted three formulations of "core" testimonial evidence: (1) *"ex parte* in-court testimony or its functional equivalent," such as affidavits, custodial examinations, prior testimony not subject to cross-examination, or "similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial statements" of the same nature "contained in formalized testimonial materials," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51–52, 124 S.Ct. 1354. The Court further explained that the term "testimonial" applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68, 124 S.Ct. 1354. The Court also declined to define "police interrogation" but did note that "interrogation" is used "in its colloquial, rather than any technical legal, sense." *Id.* at 53 n. 4, 124 S.Ct. 1354.

The issue we address is whether statements made by a crime victim to police on the scene responding to the victim's call for help shortly after the crime are testimonial. The only Texas case to address this issue is *Key v. State,* No. 12–04–00030–CR, 2005 WL 467167, —— S.W.3d —— (Tex.App.-Tyler Feb. 28, 2005, pet. ref'd).[2] In *Key,* a police officer arrived at

**2.** The Court of Criminal Appeals has only briefly addressed a *Crawford* issue, noting that "casual remarks that [a witness] spontaneously made to acquaintances" were not testimonial. *Woods v. State,* 152 S.W.3d 105, 114 (Tex.Crim.App.2004). This court addressed *Crawford* in a different context than we consider here, holding that a videotaped statement given to police was testimonial. *See Gutierrez v. State,* 150 S.W.3d 827, 830 (Tex. App.-Houston [14th Dist.] 2004, no pet.); *see also Jahanian v. State,* 145 S.W.3d 346, 350 (Tex.App.-Houston [14th Dist.] 2004, no pet.)

(finding that written statement given during police investigation after witness had become a suspect was testimonial). The only real split of authority in Texas cases involves whether police questioning of a victim at the hospital is testimonial. *Compare Wall v. State,* 143 S.W.3d 846, 851 (Tex.App.-Corpus Christi 2004, pet. granted) (statements given following questioning at hospital testimonial), *with Cassidy v. State,* 149 S.W.3d 712, 716 (Tex.App.-Austin 2004, pet. ref'd) (statements given following questioning at hospital nontestimonial), *cert. denied,* —— U.S. ——, 125 S.Ct. 1648, 161 L.Ed.2d 486 (2005).

a residence in response to a disturbance call and found a man and a woman sitting outside arguing. The woman told the officer the man had been restraining her all day and had pulled her to the ground and injured her when she recently tried to run from the house. At the man's assault trial, the woman did not testify, but the officer testified as to the woman's statements to him. *Id.* at *1, —— S.W.3d at ——. In evaluating the man's *Crawford* issue, the court noted that "[t]he types of statements cited by the *Crawford* court as testimonial all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings." *Id.* at *2, —— S.W.3d at ——. In assessing whether the woman's statements were given in response to police interrogation, the court concluded that the unstructured interaction between the officer and the woman while the officer was responding to a call and securing and assessing the scene did not amount to interrogation. *Id.* at *4, —— S.W.3d at ——; *see also Gonzalez v. State*, 155 S.W.3d 603, 609 n. 4 (Tex.App.-San Antonio 2004, pet. filed) (commenting, but not deciding, that investigatory questioning immediately after a crime is likely not interrogation); *Wilson v. State*, 151 S.W.3d 694, 697–98 (Tex.App.-Fort Worth 2004, pet. ref'd) (finding that admission of non-testifying witness's self-initiated statements to police officers in response to unstructured questions during the investigation of a crime did not violate *Crawford*); *Davis v. State*, No. 2–03–305–CR, 2005 WL 183141, at *4 (Tex.App.-Fort Worth Jan. 27, 2005, pet. filed) (not designated for publication) (holding that voluntary statements to the police initiated by the witness are not interrogation and therefore are nontestimonial).

After concluding the statements were not made in response to police interrogation, the Tyler court did not end its analysis there. Because the woman's statements were admittedly excited utterances, the court concluded they were not testimonial as a matter of law because with an excited utterance, the declarant has had no time for reflection or deliberation and thus has not made the statement in contemplation of its use in a future trial. *Key,* —— S.W.3d at —— – ——, 2005 WL 467167, at *4–5. We disagree with the Tyler court's conclusion that all excited utterances are nontestimonial. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX.R. EVID. 803(2). The State urges us to categorically conclude, as did the Tyler court, that excited utterances are nontestimonial. This position has support in cases from other jurisdictions. Some courts have expressed skepticism as to whether an excited utterance can ever be testimonial. *See, e.g., People v. Corella*, 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770, 776 (2004); *People v. King*, No. 02CA0201, —— P.3d ——, ——, 2005 WL 170727, at *5 (Colo.Ct.App. Jan.27, 2005); *Hammon v. State*, 809 N.E.2d 945, 952–53 (Ind.Ct.App.2004). Others have concluded that the characteristics that make a statement an excited utterance are inconsistent with the statement being testimonial. *See, e.g., Fowler v. State*, 809 N.E.2d 960, 964 (Ind.Ct.App. 2004); *People v. Isaac*, No. 23398/02, 2004 WL 1389219, at *4 (N.Y.Dist.Ct. June 16, 2004)(unpublished disposition); *State v. Anderson*, No. E2004–00694–CCA–R3–CD, 2005 WL 171441, at *4 (Tenn.Crim. App. Jan. 27, 2005). All of these courts have focused on the declarant's lack of deliberation in making the excited utterance, which they conclude indicates that the declarant could not have anticipated

the statement being used prosecutorially. *See Corella*, 18 Cal.Rptr.3d at 776; *King*, —— P.3d at ——, 2005 WL 170727, at *5; *Fowler*, 809 N.E.2d at 964; *Hammon*, 809 N.E.2d at 952–53; *Isaac*, 2004 WL 1389219, at *4; *Anderson*, 2005 WL 171441, at *4.

Certainly, the fact that a statement is an excited utterance is a factor that can be considered when determining whether the statement is testimonial. However, we note that Texas courts have held that a declarant's state of excitement can last long after the initial crime and that excited utterances can be made both spontaneously and in response to questioning. *See, e.g., Zuliani v. State*, 97 S.W.3d 589, 596 (Tex.Crim.App.2003) (holding that statement made twenty hours after altercation in response to a question was an excited utterance and stating: "Declarations made either in response to questioning or after some time had elapsed are only two factors in determining whether a statement is an excited utterance. Neither factor alone is dispositive." (citation omitted)). It is not unreasonable to imagine a situation in which officers secure a scene and then begin formal, structured questioning of witnesses (or the victim) who are still under the stress of the situation. We are not convinced that responses to questions under such circumstances would be nontestimonial. Each situation should be analyzed individually. *See Stancil v. United States*, 866 A.2d 799, 809 (D.C.Ct.App.2005) ("Some excited utterances are testimonial, and others are not, depending on the circumstances."). Accordingly, we decline to join those courts that have established a bright-line rule that excited utterances can never be testimonial.

Though we disagree with its excited utterance analysis, we agree with the Tyler court's conclusion that statements made to officers responding to a call during the initial assessment and securing of a crime scene are not testimonial. *See Key*, 2005 WL 467167, at *4, —— S.W.3d at ——. A majority of courts in other jurisdictions have also held "that initial police-victim interaction at the scene of an incident is not an interrogation." *Id.* at *3, —— S.W.3d at ——. For example, in *Hammon*, in concluding that a police officer's questioning did not constitute interrogation, the Indiana Court of Appeals noted that the "common denominator" in the various examples of testimonial statements given in *Crawford*, which was lacking here, "is the official and formal quality of such a statement." *Hammon*, 809 N.E.2d at 952. Even though the victim's statements were given in response to questioning from the officer, such informal questioning is not the same as interrogation. *Id.* The court held that the victim's statements were not testimonial:

> We thus hold that when police arrive at the scene of an incident in response to a request for assistance and begin informally questioning those nearby immediately thereafter in order to determine what has happened, statements given in response thereto are not "testimonial." Whatever else police "interrogation" might be, we do not believe that word applies to preliminary investigatory questions asked at the scene of a crime shortly after it has occurred.

*Id.; accord Rogers v. State*, 814 N.E.2d 695, 701–02 (Ind.Ct.App.2004); *Fowler*, 809 N.E.2d at 962–64.

The California Court of Appeal reached a similar conclusion in *Corella*. The court held that the victim's statements, made to an officer responding to her call for help, were not given in response to structured police questioning and therefore were not testimonial:

> Preliminary questions asked at the scene of a crime shortly after it has occurred do not rise to the level of an

"interrogation." Such an unstructured interaction between an officer and a witness bears no resemblance to a formal or informal police inquiry that is required for a police interrogation as that term is used in *Crawford.*

*Corella,* 18 Cal.Rptr.3d at 776.

In *State v. Forrest,* 164 N.C.App. 272, 596 S.E.2d 22 (2004), the North Carolina Court of Appeals analyzed whether a kidnap victim's spontaneous statements to police immediately after being rescued were testimonial. *Id.* at 24–25. The court concluded that such statements were not the product of police interrogation and therefore not testimonial. *Id.* at 27. "*Crawford* protects defendants from an absent witness's statements introduced after formal police interrogations in which the police are gathering additional information to further the prosecution of the defendant. *Crawford* does not prohibit spontaneous statements from an unavailable witness like those at bar." *Id.*

 The relevant Texas authority, along with *Hammon, Corella, Forrest,* and a majority of other courts, establish several principles that guide our analysis in this case:

(1) Testimonial statements are official and formal in nature. *See Key,* 2005 WL 467167, at *2, —— S.W.3d at ——; *Wilson,* 151 S.W.3d at 698; *Corella,* 18 Cal.Rptr.3d at 776; *Fowler,* 809 N.E.2d at 964; *Hammon,* 809 N.E.2d at 952; *Forrest,* 596 S.E.2d at 27; *see also People v. Watson,* No. 7715/90, 2004 WL 2567124, at *10 (N.Y.Sup.Ct. Nov.8, 2004) (unpublished disposition) ("*Crawford,* therefore, suggests that a testimonial statement in the context of a police interrogation is one which the declarant makes knowingly in response to structured questioning which the government is un-

dertaking in furtherance of the prosecution of the defendant, or under some other circumstances which renders the statement a 'formal' declaration.").

(2) Interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police. *See Wilson,* 151 S.W.3d at 698; *Davis,* 2005 WL 183141, at *4; *Corella,* 18 Cal.Rptr.3d at 776; *see also People v. Moscat,* 3 Misc.3d 739, 777 N.Y.S.2d 875, 879–80 (Crim.Ct.2004) (finding that statements made during 911 call were nontestimonial, in part because the call is typically initiated by the victim, not the police).

(3) Spontaneous statements to the police are not testimonial. *See Davis,* 2005 WL 183141, at *4; *Forrest,* 596 S.E.2d at 27; *see also Watson,* 2004 WL 2567124, at *14 (holding that an unprompted remark by witness to police on the scene was nontestimonial); *Commonwealth v. Gray,* 867 A.2d 560, 577 (Pa.Super.Ct.2005) (noting the consensus that excited utterance statements volunteered to police to obtain their assistance are nontestimonial).

(4) Responses to preliminary questions by police at the scene of a crime while police are assessing and securing the scene are not testimonial. *See Key,* —— S.W.3d at —— - ——, 2005 WL 467167, at *3–4; *Gonzalez,* 155 S.W.3d at 609 n. 4; *Wilson,* 151 S.W.3d at 698; *Corella,* 18 Cal.Rptr.3d at 776; *Fowler,* 809 N.E.2d at 964; *Hammon,* 809 N.E.2d at 952; *see also United States v. Webb,* No. DV–339–04, 2004 WL 2726100, at *3 (D.C.Super.Ct. Nov. 9, 2004) (finding "investigatory questioning at the scene of a crime soon after the criminal event" to be nontestimonial (emphasis omitted)).

Applying these principles to the case at bar, we find that O'Mealey's statements to the deputies were not testimonial. O'Mealey summoned the police for help. She, not the police, initiated the contact. The record is unclear as to whether her statements to the deputies were unprompted or in response to questioning.[3] Deputy Igoe testified that he immediately asked O'Mealey if appellant was still on the scene as he could be a threat to O'Mealey or the officers. This simple, preliminary question designed to ensure the safety of those on the scene does not amount to interrogation. The deputies' remaining testimony merely reflects what O'Mealey "said" or "told" them. However, even assuming O'Mealey's statements were made in response to questioning, preliminary questions when police arrive at a crime scene to assess and secure the scene do not constitute interrogation.[4] They bear no indicia of the formal, structured questions necessary for statements to be testimonial. Thus, we conclude that O'Mealey's state-

ments to the deputies upon their arrival at the scene were not testimonial,[5] and the trial court's admission of the statements did not violate appellant's rights under the Confrontation Clause. We overrule appellant's sole issue.

The judgment of the trial court is affirmed.

---

3. It is not surprising that the testimony was not developed this way, given that this case was tried before *Crawford* was decided and highlighted the significance of police interrogation in assessing whether a statement is testimonial.

4. The lead case expressing an alternative view is *Lopez v. State*, 888 So.2d 693 (Fla.Dist.Ct. App.2004). In *Lopez*, when officers encountered an alleged kidnap victim and asked what happened, the victim said he had been abducted at gunpoint by the defendant. *Id.* at 695. In assessing whether the victim's statements to the officer were testimonial, the court agreed that they did not fall within the first or second of the core classes of testimonial statements outlined in *Crawford* because they were informal and not made in response to a structured police inquiry. *Id.* at 698. However, the court concluded the statements were testimonial under the third core class of testimonial statements, which it characterized to include statements "meant to be used against someone in court." *Id.* Thus, if a statement is made to a person with authority,

such as a police officer, for the purpose of accusing someone, it is testimonial. *Id.* at 699. We disagree with the *Lopez* court's use of this third category to broaden the spectrum of statements to the police that are testimonial. *Crawford* clearly states that responses to police interrogations are testimonial statements, *see* 541 U.S. at 52, 124 S.Ct. 1354, and we do not read *Crawford* as indicating that responses to questions that do not rise to the level of interrogation are testimonial. *See Hammon*, 809 N.E.2d at 952 (distinguishing between police interrogation, which gives rise to testimonial statements, and police questioning, which does not); *accord King*, 2005 WL 170727, at *5, —— P.3d at ——; *Webb*, 2004 WL 2726100, at *3; *Fowler*, 809 N.E.2d at 964.

5. The State does not argue that the written statement O'Mealey provided once the deputies accompanied her into her house is non-testimonial. Indeed, at that point, the entire character of the interaction changed, taking on a much more formal and structured quality.