

# IN THE
# TENTH COURT OF APPEALS

No. 10-15-00112-CR

**JARVIS MCDAVID,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 13th District Court
Navarro County, Texas
Trial Court No. D35700-CR**

## MEMORANDUM  OPINION

In two issues, appellant, Jarvis Dunk McDavid, challenges his conviction for aggravated assault with a deadly weapon.  *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).  Specifically, appellant contends that the trial court abused its discretion by admitting:  (1) testimonial statements contained in a 911 call; and (2) evidence of extraneous offenses committed by appellant.  We affirm.

# I. BACKGROUND

Based on complaints made by appellant's wife, LaToya McDavid, appellant was charged by indictment with aggravated assault with a deadly weapon. *See id.* LaToya alleged that appellant pulled her hair, held her down, struck her twice in the face with an open hand, and threatened her while holding a kitchen knife to her throat. A jury convicted appellant of the charged offense, and the trial court sentenced appellant to fifteen years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. The trial court certified appellant's right of appeal, and this appeal followed.

# II. THE 911 CALL

In his first issue, appellant contends that the trial court abused its discretion in admitting testimonial statements that occurred during the 911 call. We disagree.

## A. Facts

Outside the presence of the jury, appellant objected to the admission of the 911 call that was made by LaToya's mother after she received a text message from LaToya about the assault. Amy Zapata, the 911 dispatcher from the Corsicana Police Department, testified that: "Upon receiving the call it was a female, advised she received a daughter—a text from her daughter that, that she was being assaulted. And she provided me with the address. And at that time I dispatched the police officers to the location." Later, Zapata noted the following: "Yes, well, it came in third party, so I got as much

information as I could.  Based upon the information from the caller I determined that it's possible that the assault was taking place and so we dispatched the police."

When the State offered the recording of the 911 call for inclusion in the evidence, appellant objected, arguing that, among other things, he was prevented from cross-examining the caller, LaToya's mother, which constituted a violation of the Confrontation Clause.[1]  The State responded that the recording was offered "for the fact that a call was placed to 911," not "as evidence that the defendant was assaulting his wife."  The State further argued:

> That the nature of that call was that there was of a possible assault occurring and the effect on that was that dispatch sent police officers to the address given to them by the caller.
>
> . . . .
>
> She's not giving testimony against this defendant.  She was placing a call so that an investigation would occur.  So that if there was a situation going on the appropriate law enforcement agency could respond.

At the conclusion of the arguments, the trial court overruled appellant's objection and granted appellant a running objection with regard to the 911 call.

---

[1] The prosecutor noted at the hearing on appellant's objection to the admission of the 911 call that he had previously issued a subpoena for LaToya's mother, but he believed that she was "willingly dodging service."  The prosecutor sought leave of the court to present a writ of attachment to have LaToya's mother arrested and brought to the court to testify.  The record reflects that LaToya's mother did not testify at trial.

**B.  Discussion**

With regard to statements made during a 911 call, this Court has stated that we review de novo the trial court's ruling that the admission of the 911 call did not violate appellant's rights under the Confrontation Clause.  *Kearney v. State*, 181 S.W.3d 438, 441 (Tex. App.—Waco 2005, pet. ref'd) (citing *McClenton v. State*, 167 S.W.3d 86, 93 (Tex. App.—Waco 2005, no pet.)).

> The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him."  U.S. CONST. amend. VI.  The Confrontation Clause's central concern is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact.  *Lilly v. Virginia*, 527 U.S. 116, 124-24, 119 S. Ct. 1887, 1894, 144 L. Ed. 2d 117 (1999).  The United States Supreme Court recently held that "testimonial statements" of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only when the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine.  *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1368-69, 158 L. Ed. 2d 177 (2004).

*Id.* at 441-42.

The threshold inquiry in a *Crawford* analysis is whether the statements were testimonial.  *Spencer v. State*, 162 S.W.3d 877, 879 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).  "Whether a statement is testimonial is a question of law."  *Pollard v. State*, 392 S.W.3d 785, 792 (Tex. App.—Waco 2012, pet. ref'd) (citing *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008)).  The *Crawford* Court did not define "testimonial," but it did describe three

categories of testimonial evidence: (1) "ex parte in-court testimony or its functional equivalent," such as affidavits, custodial examinations, prior testimony not subject to cross-examination, or "similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial statements" of the same nature "contained in formalized testimonial materials," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52, 124 S. Ct. at 1364. The *Crawford* Court further explained that the term "testimonial" applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." *Id.* at 68, 124 S. Ct. at 1374.

In analyzing whether statements are testimonial in nature, this Court has followed the Fourteenth Court of Appeals's reasoning in *Ruth v. State*, 167 S.W.3d 560, 568-70 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). *See Kearney*, 181 S.W.3d at 442-43. In *Ruth*, the Court considered the following criteria to determine whether a statement is testimonial:

(1) Testimonial statements are official and formal in nature.

(2) Interaction with the police initiated by a witness or the victim is less likely to result in a testimonial statement than if initiated by the police.

(3) Spontaneous statements to the police are not testimonial.

(4) Responses to preliminary questions by the police at the scene of a crime while police are assessing and securing the scene are not testimonial.

167 S.W.3d at 568-69.  The *Ruth* Court concluded that statements to the police—whether spontaneous or in response to preliminary questions—when police are called to a crime scene shortly after a crime are not testimonial because the interaction was not initiated by police, nor was the interaction formal or structured.  *Id.* at 569 (citing *Spencer*, 162 S.W.3d at 882-83).  Later, the *Ruth* Court mentioned:

> [S]tatements made during 911 calls are similar in nature to the situation we addressed in *Spencer*.  Such statements are not given in response to structured police questioning or with an eye to [] future legal proceedings but are initiated by a victim or witness to obtain police assistance.  *See People v. Corella*, 122 Cal. App. 4th 461, 18 Cal. Rptr. 3d 770, 776 (Ct. App. 2004); *People v. Moscat*, 3 Misc. 3d 739, 777 N.Y.S.2d 875, 879-80 (Crim. Ct. 2004); *State v. Davis*, 154 Wn.2d 291, 111 P.3d 844, 849 (Wash. 2005).  They usually do not bear any of the official, formal qualities of the police interactions the Confrontation Clause was intended to protect against.  *See Corella*, 18 Cal. Rptr. 3d at 776; *Moscat*, 777 N.Y.S.2d at 879-80; *Davis*, 111 P.3d at 850-51.  Some courts have held that statements made during 911 calls should be analyzed on a case-by-case basis because some statements could be testimonial under certain circumstances.  *See People v. West*, 355 Ill. App. 3d 28, 823 N.E.2d 82, 91, 291 Ill. Dec. 72 (Ill. App. Ct. 2005) (holding that 911 calls should be analyzed on a case-by-case basis to determine whether the statements at issue were volunteered to obtain police action or the result of interrogation to gather evidence for use in criminal prosecution); *People v. Mackey*, 5 Misc. 3d 709, 785 N.Y.S.2d 870, 872 (Crim. Ct. 2004) (noting that "various courts have begun to adopt a fact-specific analysis of the particular call and the caller's motive for making the call" in conducting *Crawford* analyses); *Davis*, 111 P.3d at 850 ("In most cases, one who calls 911 for emergency help is not 'bearing witness,' whereas calls made to the police simply to report a crime may conceivably be considered testimonial.  It is necessary to look at the circumstances of the 911 call in each case to determine whether the declarant knowingly provided the functional equivalent of testimony to a government agent.").  *But see People v. Cortes*, 4 Misc. 575, 781 N.Y.S.2d 401, 415 (Sup. Ct. 2004) (categorically concluding that "calls to 911 to report a crime are testimonial under [*Crawford*]").

*Id.*

In this case, LaToya's mother called 911 to report that appellant was assaulting her daughter and to summon emergency help. In doing so, LaToya's mother provided Zapata with LaToya's address so that police could be dispatched to the house. Zapata also testified that she determined from the call that an assault was in progress and that it was necessary to dispatch police to the house. The statements were initiated by LaToya's mother and were not given in response to structured police questioning or with an eye to future legal proceedings. *See id.* Therefore, based on our review of the record, we conclude that the statements LaToya's mother made to Zapata constituted a non-testimonial call for help. *See id.; see also Kearney*, 181 S.W.3d at 441-43; *Spencer*, 162 S.W.3d at 822-83. And because the statements on the 911 call were not testimonial, we cannot say that appellant's right of confrontation was implicated. *See Kearney*, 181 S.W.3d at 443; *see also Crawford*, 541 U.S. at 51-52, 124 S. Ct. at 1364; *Ruth*, 167 S.W.3d at 568-70; *Spencer*, 162 S.W.3d at 879. Additionally, we cannot conclude that the trial court abused its discretion in admitting the 911 call into evidence. *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) ("In determining whether a trial court erred in admitting evidence, the standard for review is abuse of discretion. A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree."). We overrule appellant's first issue.

### III. EXTRANEOUS-OFFENSE EVIDENCE

In his second issue, appellant asserts that the trial court abused its discretion in admitting evidence of his extraneous offenses because he never opened the door to such testimony. Appellant argues that he was harmed "by the creation of a 'bad man' influence via admission of extraneous offense evidence."

On appeal, appellant complains about the following exchange between the prosecutor and LaToya on direct examination:

| | |
|---|---|
| [The State]: | Isn't it the more likely case, Mrs. McDavid, that you're just worried about your husband going to prison? |
| [LaToya]: | No because he didn't do nothing. |
| Q: | Because he didn't do—how do you know he didn't do nothing? |
| A: | Because he didn't do it. |
| Q: | How do you know that? |
| A: | Because he didn't do it. |
| Q: | Okay. You keep giving me the same answer, but how do you know that? |
| A: | Because I know he wouldn't do it. |
| Q: | You know he wouldn't do it, or you know he didn't do it? |
| A: | He didn't do it. He wouldn't do nothing like that. |

At this point, the prosecutor argued that LaToya opened the door to explore prior acts of family violence between appellant and LaToya. The prosecutor further alleged that the video documenting the encounter between LaToya and the responding officers indicated that LaToya said that appellant is "doing BIP and he's doing family violence course, and anger management course." Over appellant's objection, the trial court allowed the prosecutor to inquire about appellant's prior bad acts towards LaToya.

With respect to the prior bad acts, the prosecutor's questions were confined to the following:

| [The State]: | Mrs. McDavid, you say he wouldn't do something like this; is that right? |
|---|---|
| [LaToya]: | Right. |
| Q: | Have you ever said that he's done something like this to you in the past? I can't hear you? |
| A: | I don't remember. |
| Q: | Oh, you don't remember that either. |
| A: | No. |
| Q: | Do you remember the night of this incident telling the Officer that you husband was in the middle of a batter's [sic] intervention program and anger management for assaulting you previously? |
| A: | No. |
| Q: | You don't remember that either? |
| A: | No. |

Q:       Mrs. McDavid, are you going to conveniently not remember anything that might incriminate your husband?

A:       If I can't remember, I just can't remember.

Assuming without deciding that the complained-of testimony was erroneously admitted, we cannot say that appellant was harmed. First, LaToya denied remembering if appellant had assaulted her in the past.[2] Additionally, the majority of the exchange pertained to statements LaToya made to responding officers—statements that were recorded and admitted into evidence without objection. In other words, the substance of the complained-of exchange was cumulative of the recorded statements LaToya made to responding officers at the scene of the crime. Therefore, any error in admitting the complained-of exchange was cured because the same information was already admitted into evidence through the video recording. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) ("An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection."); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). Accordingly, we overrule appellant's second issue.

---

[2] Similar to her testimony, LaToya asserted in an affidavit of non-prosecution and a letter that she could not remember this incident and requested that the charges against appellant be dropped. Both documents were signed by LaToya and admitted into evidence without objection.

## IV.   CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the judgment of

the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed December 3, 2015
Do not publish
[CR25]

