

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00124-CR

Cesar **ZUNIGA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 13, Bexar County, Texas
Trial Court No. 548303
Honorable Crystal D. Chandler, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
              Marialyn Barnard, Justice
              Patricia O. Alvarez, Justice

Delivered and Filed:  September 5, 2018

AFFIRMED

A jury convicted appellant Cesar Zuniga of assault–bodily injury.  The trial court sentenced Zuniga to one year in jail and assessed a $2,000.00 fine.  The trial court made an affirmative finding of family violence.  In his sole appellate issue, Zuniga contends the evidence is legally insufficient to support his conviction.  We affirm the trial court's judgment.

### BACKGROUND

Late one evening, complainant Maryann Morales called 911 to report that she had been assaulted by Cesar Zuniga, the father of two of her children.  San Antonio Police Department Officer Freddie Rodriguez and Detective Shirley Alvarado responded to the call.

At trial, Officer Rodriguez testified that when he arrived, Ms. Morales appeared shaken, and had visible injuries on her face. Zuniga was not present when law enforcement arrived. Ms. Morales identified Zuniga as the person who assaulted her and provided Officer Rodriguez with his date of birth, address, and a physical description. Officer Rodriguez testified Ms. Morales's injuries appeared consistent with her account of the assault.

According to Detective Alvarado, Ms. Morales was fearful and nervous. Ms. Morales advised law enforcement that she was worried Zuniga might return and continue his assault. Ms. Morales attempted to contact several family members to pick her up and take her and her daughter somewhere safe for the night. Ms. Morales informed both Officer Rodriguez and Detective Alvarado that Zuniga hit her in the face several times and also hit her in the back of the head. Detective Alvarado photographed Ms. Morales's injuries, which included substantial swelling around her left eye, cuts on her brows and inside her lip, and bruising around her cheekbone and right eye. Detective Alvarado testified that based on her experience and training, she believed Ms. Morales had recently been punched in the face several times because the injuries were still swelling and the blood had not yet dried.

In recounting the details of the assault to the law enforcement, Ms. Morales stated the incident started as a disagreement over Zuniga leaving the apartment. Ms. Morales did not want Zuniga to leave because he was intoxicated and she did not want him to get into any more trouble, as he had recently spent time in jail for DWI. Ms. Morales told both the officer and the detective that she stood in front of the door to prevent Zuniga from leaving. In response, Zuniga threw her to the ground and punched her multiple times. The State introduced, and the trial court admitted into evidence, footage from Officer Rodriguez's body camera. The video shows a tearful Ms. Morales informing Officer Rodriguez that Zuniga was the one who assaulted her and she feared

he would come back. Also on the video, Ms. Morales's young daughter can be heard saying "bad, bad Cesar."

EMS was called to the scene at Ms. Morales's request. EMS personnel advised they could feel lumps on the back of Ms. Morales's head. Ms. Morales stated she was going to the hospital for a full evaluation. Law enforcement remained at the scene with Ms. Morales until her aunt arrived to transport her to the hospital. Ms. Morales went to the hospital, but testified she stayed approximately thirty minutes, but left prior to receiving treatment.

In addition to Officer Rodriguez and Detective Alvarado, the State also called Ms. Morales as a witness. She began her testimony by stating she did not want to testify and only appeared because she was subpoenaed. Ms. Morales stated she and Zuniga had been in an on-again, off-again relationship for several years and they had two children together, the youngest of whom was born four months prior to trial. Ms. Morales testified she had lied about the assault and stated Zuniga never hit her. She claimed she called the police because Zuniga left her and told her he was leaving her for good; she was angry with him. She claimed she was suffering from post-partum depression at the time and her injuries were self-inflicted. Ms. Morales said she did not want Zuniga to get into trouble because he never hit her and had done nothing wrong.

After hearing closing arguments and the trial court's charge, the jury retired to deliberate. Ultimately, the jury found Zuniga guilty of assault–bodily injury and the court made an affirmative finding of family violence. The trial court sentenced Zuniga to confinement for one year and assessed a $2,000.00 fine. Thereafter, Zuniga perfected this appeal.

## ANALYSIS

As noted above, Zuniga raises a single issue on appeal. On appeal, he contends the evidence is legally insufficient to support the jury's finding that he committed the offense of assault–bodily injury. He points out there are significant discrepancies between Ms. Morales's

trial testimony and what she told law enforcement at the time of the assault. At trial, Ms. Morales stated she lied to the 911 dispatcher and police, she had harmed herself in an attempt to cause trouble for Zuniga, and Zuniga never assaulted her. Zuniga contends Ms. Morales's trial testimony is more credible than the spontaneous statements she made to law enforcement at the time of the event in question because it was given under oath and after Ms. Morales had time to consider the consequences of her actions.

### *Standard of Review*

We review legal sufficiency challenges under the standard set by the United States Supreme Court in *Jackson v. Virginia*. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd). Under this standard, we must decide, after viewing the evidence in the light most favorable to the verdict whether any rational trier of fact could have determined all of the essential elements of the crime were established beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Mayberry*, 351 S.W.3d at 509. We consider only whether or not the fact finder reached a rational conclusion. *See Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (noting that appellate court's role "is restricted to guarding against the rare occurrence when a fact finder does not act rationally") (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)). "This standard accounts for the fact finder's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Mayberry*, 351 S.W.3d at 509 (quoting *Jackson*, 443 U.S. at 319). Accordingly, we must show deference to the jury's assessment of witness credibility, weighing of the evidence, and resolution of conflicts in testimony. *Brooks*, 323 S.W.3d at 899; *Jackson*, 443 U.S. at 319 (holding that "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of

fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution"). And, we must be aware that we cannot reweigh the evidence or substitute our judgement for that of the jury. *Orellana v. State*, 381 S.W.3d 645, 653 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)).

Moreover, the jury may reject any part or all of a witness's testimony in order to reconcile conflicts. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Orellana*, 381 S.W.3d at 653. Any inconsistencies must be resolved in favor of the verdict. *Gonzales v. State*, 330 S.W.3d 691, 694 (Tex. App.—San Antonio 2010, no pet.) (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). "We must defer to the jury's determination of the weight to be given to contradictory testimonial evidence because resolution of the conflict is often determined by the jurors' evaluation of the witnesses' credibility and demeanor." *Gonzales*, 330 S.W.3d at 694 (quoting *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).

Circumstantial evidence is as probative as direct evidence in establishing an actor's guilt and circumstantial evidence alone can be sufficient to establish guilt. *Gonzales*, 330 S.W.3d at 694 (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The standard of review is the same for relying on direct or circumstantial evidence. *Id*. Each fact must not point directly to the guilt of the appellant, so long as the aggregate force of all incriminating circumstances is adequate to support the conviction. *See Hooper*, 214 S.W.3d at 13; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances."). Thus, when there is conflicting evidence, we must presume the jury resolved the conflicts in favor of the verdict and defer to that determination. *See Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

*Application*

A person commits the offense of assault–bodily injury if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2017). "Bodily injury" means physical pain, illness, or any other impairment of one's physical condition. *Id.* § 1.07(a)(8). Thus, the State had to prove that Zuniga intentionally, knowingly, or recklessly caused Ms. Morales bodily injury. *See id.* § 22.01(a)(1).

Admittedly, the testimony of the only eyewitness to testify — Ms. Morales — conflicted with her prior statements to law enforcement. As noted above, on the day of the alleged assault Ms. Morales informed the 911 dispatcher, Officer Rodriguez, and Detective Alvarado that Zuniga struck her multiple times. And at trial, Ms. Morales admitted she told law enforcement Zuniga hit her multiple times and she feared he would assault her again. However, during trial she recanted, claiming her initial statements were false and that she fabricated the story about the assault because Zuniga threatened to leave her.

It is not uncommon for victims of domestic violence to recant their accusations. *Moore v. State*, 169 S.W.3d 467, 469 n.3 (Tex. App.—Texarkana 2005, pet ref'd) (noting that "scholars have estimated that as many as 'eighty to ninety percent of domestic violence victims recant their accusation or refuse to cooperate with a prosecution.'"); *see Spencer v. State*, 162 S.W.3d 877 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (also recognizing domestic violence victims often recant or decline to cooperate). Officer Rodriguez and Detective Alvarado both testified that when they responded to the assault, Ms. Morales appeared agitated, visibly shaken, and had fresh injuries to her face. Both Officer Rodriguez and Detective Alvarado testified Ms. Morales had injuries consistent with being thrown to the ground and punched multiple times in the head and face.

Zuniga argues Ms. Morales's trial testimony, wherein she claimed Zuniga never assaulted her, is more credible than her statements made to the 911 dispatcher and police on the day of the

assault because her trial testimony was given under oath and she had time to consider the consequences of her actions. However, the applicable standard of review precludes this court from making judgments as to witness credibility — that is the exclusive domain of the jury. *See Brooks*, 323 S.W.3d at 899; *Jackson*, 443 U.S. at 319. At trial, the jurors heard the account of events as relayed to law enforcement at the time of the assault and saw Ms. Morales make those statements through police body camera footage. They also heard Ms. Morales's conflicting testimony at trial. It was up to the jury to accept all, some, or none of that testimony and we must presume the jurors resolved the conflicts in evidence in favor of the verdict. *See Orellana*, 381 S.W.3d at 635; *Gonzales*, 330 S.W.3d at 694. Thus, the jurors could have believed Ms. Morales's statements to law enforcement on the day of the assault were accurate, disregarding her trial testimony that contradicted those statements. *See id*. Because we must presume that the jury resolved the conflicts in evidence and testimony in favor of the verdict, and deferring to that determination, we hold the evidence was legally sufficient for the jury to find Zuniga guilty of the charged offense. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We therefore overrule Zuniga's sole issue.

## CONCLUSION

Based on the foregoing, we hold there was legally sufficient evidence for the jury to conclude Zuniga committed the offense of assault–bodily injury. Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish