

# NUMBER 13-24-00524-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**HARVEY STOCKTON A/K/A
HARVEY DEWAYNE STOCKTON
A/K/A HARVEY WAYNE STOCKTON,**                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                          **Appellee.**

---

## ON APPEAL FROM THE 85TH DISTRICT COURT
## OF BRAZOS COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Justice West**

Appellant Harvey Stockton a/k/a Harvey Dewayne Stockton a/k/a Harvey Wayne Stockton challenges his conviction for assault family violence with a prior conviction, a third-degree felony. *See* TEX. PENAL CODE § 22.01(b)(2)(A). Appellant's punishment was enhanced due to two prior felony convictions, and the trial court sentenced appellant to

fifty-one years' imprisonment. Appellant argues that (1) the trial court erred when it admitted two videos into evidence because the videos contained testimonial hearsay from an unavailable witness in violation of the Confrontation Clause of the Sixth Amendment, and (2) admission of the videos was harmful. Because we conclude that the footage contained non-testimonial statements, the trial court did not err when it admitted the videos. We affirm.

## I. BACKGROUND[1]

Appellant was indicted with assault family violence by strangulation with a prior conviction (Count 1), assault family violence with a prior conviction (Count 2), and burglary of a habitation with intent to commit assault (Count 3). *See id.* §§ 22.01(b)(2)(A), (B), 30.02. The indictment contained enhancement paragraphs alleging appellant is a habitual felony offender. *See id.* § 12.42(d). The State abandoned Count 3 prior to trial.

At trial, Javier Castillo, a College Station Police Department (CSPD) officer, testified that he was dispatched to an apartment complex for a "civil disturbance in progress." Upon arrival, Castillo saw one male and one female standing near each other outside one part of the building, and another male standing outside another part of the building. Castillo approached the male and female subjects. CSPD Officer Chris Morgan also responded to the scene and talked to the other male.

Castillo testified that the female, Jazmin Flores, "appeared pretty distraught" and "looked like she'd been crying." He also noticed she was hyperventilating, and she had a "raspy voice." After Castillo testified he asked Flores "what was going on," defense

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001.

2

counsel objected, arguing that Castillo's testimony about what Flores told him was hearsay and violated the Confrontation Clause. The trial court overruled defense counsel's objections but granted a running objection to Castillo's testimony. Castillo then elaborated:

> So I walked up there and I asked her what was going on. She proceeded to tell me that she had just broken up with [appellant] . . . . She stated that it was no relationship [sic] but they had been having sex for the past three weeks. From there she proceeded to say that she had texted him saying that she wanted to break up. [Appellant] responded back asking for—I believe it was a blanket and some eggs from her residence. Therefore, she grabbed those two items[,] and her and her daughter walked over to the front of his apartment, she laid those two items on a chair that I believe was outside. She said that [appellant] exited his apartment and they started having some sort of verbal argument regarding the breakup.
>
> From there Ms. Flores decided to walk away from the situation. I believe she stated that she started to proceed downstairs whenever she felt pressure and—around her neck. I believe she stated that she felt two hands go around her neck and then within seconds she had passed out. She . . . stated she regained consciousness to her daughter saying—I believe, like, "Get up mommy. Get up mommy." And that's whenever she realized that she had just been a victim of an assault.
>
> From there she stated that she proceeded back to her apartment and was very distraught.

After talking with Flores, Castillo requested EMS to examine her for injuries "because she was a victim of possible strangulation." Flores initially denied medical treatment but submitted to an examination inside the ambulance after the paramedic arrived. Once exposed to ambulance's interior lights, Castillo could see "redness" and "scratches" on Flores's neck. Andrew Kincell, the responding paramedic, testified he did not observe any marks, scratches, redness, or anything "consistent with. . . being choked" on Flores's neck.

Flores was unavailable at trial, and the parties argued about the admissibility of two videos from Castillo's body camera footage that included her statements about the assault. The first video shows Castillo arriving at the residence and talking with Flores. The second video shows Kincell asking Flores about her injuries in the ambulance. Defense counsel argued the videos should not be admitted because they contained hearsay and violated the Confrontation Clause. The State responded that Flores's statements fell under exceptions to the general rule against hearsay and were non-testimonial statements. The trial court overruled the defense's objections, and both videos were admitted and played for the jury.

Two eyewitnesses testified. Willie Creeks, a resident at Flores's apartment complex, heard a woman yell, "Get out of my house," and saw a man push or force her back into her apartment. Creeks testified that he saw "a little baby standing in the doorway" which prompted him to call 911. While on the phone with the operator, Creeks saw a second man come to the apartment and "bust[] the door open." The first man ran out of the apartment and went inside a neighboring unit.

Jose Sanchez, the second eyewitness, testified that Flores called him for help the night of the assault. Upon arrival to her apartment, he looked through the apartment window and saw appellant and Flores in "a struggle." He testified appellant "had his hand over" Flores and was grabbing her by the shoulder. After Sanchez knocked on the door, appellant let go of Flores and exited the apartment. Appellant went to his apartment next door and threw eggs at Sanchez and Flores. Afterwards, Sanchez testified that Flores told him appellant choked her until she lost consciousness. Defense counsel objected to

4

Sanchez's testimony on the basis of hearsay and the Confrontation Clause, and the trial court overruled the objections.

The jury returned a verdict of guilty on Count 2, assault family violence with a prior conviction. *See id.* The jury was unable to reach a verdict as to Count 1, assault family violence by strangulation, and the trial court declared a mistrial as to that count. The trial court assessed punishment at fifty-one years' imprisonment. This appeal followed.

## II.    DISCUSSION

### A.    Standard of Review & Applicable Law

The Confrontation Clause of the Sixth Amendment, made applicable to the states via the Fourteenth Amendment, guarantees an accused the right to confront and cross-examine adverse witnesses. U.S. CONST. amends. VI, XIV; *Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008). The Confrontation Clause bars admission of any "testimonial" out-of-court statement unless the declarant is unavailable, and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Langham v. State*, 305 S.W.3d 568, 576–77 (Tex. Crim. App. 2010). On appeal, whether a statement is testimonial is a question of law we review de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

"Generally speaking, a hearsay statement is 'testimonial' when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (citing *Davis v. Washington*, 547 U.S. 813, 822–23 (2006)). If the primary purpose of gathering the complained-of statements is something other than for a criminal investigation, "the

5

Confrontation Clause does not require such statements to be subject to the crucible of cross examination." *Michigan v. Bryant*, 562 U.S. 344, 361 (2011). We consider the following nonexclusive factors when determining whether a statement is testimonial or non-testimonial:

> [(]1) whether the situation was still in progress; [(]2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; [(]3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; [(]4) whether the questioning was conducted in a separate room, away from the alleged attacker; and [(]5) whether the events were deliberately recounted in a step-by-step fashion.

*Vinson*, 252 S.W.3d at 339 (citing *Davis*, 547 U.S. at 829–30).

## B.    Analysis

Appellant argues the trial court erred when it admitted the two videos from Officer Castillo's body camera footage because they contained testimonial hearsay.[2] He contends that, as to the first video, "there was no ongoing emergency" by the time officers arrived to the scene, and Officer Castillo's questions to Flores were "investigative" and were meant to gather information about past events.

Generally, statements to the police in response to preliminary questions after the police are called to a crime scene shortly after a crime "are not testimonial because such interactions are not initiated by the police and are not formal or structured." *Kearney v.*

---

[2] The State contends appellant's complaint is not preserved because defense counsel "did not obtain an adverse ruling." Relying on *Swenson v. State*, the State points to an exchange in the record where, after defense counsel objects to the admission of the first video, the trial court responds, "I understand. Your objection is noted on the record." *See* No. 06-21-00126-CR, 2025 WL 1074970, at *1–2 (Tex. App.—Texarkana Apr. 10, 2025, no pet.) (mem. op., not designated for publication) (holding that the appellant failed to preserve his objection to the prosecutor's "impermissible jury argument" because "the trial court only answered that the objection was 'noted'"). However, the record shows that, prior to that exchange, the trial court overruled defense counsel's objection to the first video. And later, the trial court explicitly overruled defense counsel's objection to the second video. Accordingly, appellant's challenge to the admissibility of the two videos is preserved for appellate review.

*State*, 181 S.W.3d 438, 442 (Tex. App.—Waco 2005, pet. ref'd) (citing *Spencer v. State*, 162 S.W.3d 877, 882–83 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)); *see Bryant*, 562 U.S. at 375–77. Castillo testified that when he received the call from dispatch about the civil disturbance in progress, he did not know how many people were present or if there were weapons involved. Indeed, Castillo asks in the video if there were "two gentleman fighting." Castillo further testified that when he arrived, his first step was to "secure the scene" and "[t]ry to locate where this offense occurred and anybody involved and pretty much kind of get a rundown of what happened to see if there's anybody who's maybe still on the loose or anything of that nature."

The video starts with Castillo walking up to Flores and Sanchez and asking, "Hey, what's going on tonight, guys?" Flores instructs Sanchez to go inside to watch her daughter, and after some back and forth, the following exchange occurred:

| | |
|---|---|
| Officer Castillo: | Okay. So what happened? Who, who's all involved, so…? |
| Flores: | That neighbor over there. |
| Officer Castillo: | Okay. |
| Flores: | I [unintelligible] me. Okay. Uh. |
| Officer Castillo: | Was there another gentleman? Where, where did the other gentleman go? |
| Flores: | No, there is no other gentleman. |
| Officer Castillo: | There's no other gentleman? Someone told us that there was, uh, two gentlemen fighting. So, . . . |
| Flores: | No, it's just me and him. |
| Officer Castillo: | Okay. |
| Flores: | I just called [Sanchez] right here to come to my house because I was scared. And even when I called him up here, he came to my house and I have a camera. |

7

| | |
|---|---|
| Officer Castillo: | So, so, tell from the very beginning what, what all happened? Like, how did, how did an altercation occur if he's all the way over there? So what happened? |
| Flores: | Basically, I broke up with [appellant] and he was very upset about that. And I was returning some items that he kept at my house, and he was really upset that I didn't want him back. He choked me out in front of my daughter (crying). |
| Officer Castillo: | Okay. This all happened inside your apartment? Inside there? |
| Flores: | Outside (crying). |
| | . . . . |
| Officer Castillo: | . . . What's his name? |
| Flores: | Dwayne Stockton. |
| Officer Castillo: | Dwayne. |
| Flores: | Harvey Dwayne Stockton (crying). |
| Officer Castillo: | Did he go back into the apartment, [Officer] Morgan? |
| Officer Morgan: | Uh, so the roommate did. The one that she identified. So the guy that was out here… |
| Flores: | It's not him, it's the neighbor. |
| Officer Castillo: | Okay. |
| Officer Morgan: | He's just the roommate. |
| Flores: | Yeah. |
| Officer Castillo: | Okay. |
| Officer Morgan: | And so he went inside. |
| Officer Castillo: | Sounds like we got strangulation, by the way. So… |
| Flores: | I pass (crying). |
| Officer Castillo: | Okay, so… |
| Flores: | I passed out. I've never… (crying). |

8

Here, appellant was not at the scene when officers initially arrived, and Flores, the alleged victim, told officers that she was "scared." Castillo asked questions such as, "Who's all involved?"; "What happened?"; "Was there another gentleman?"; and "[W]here did the other gentleman go?" While appellant contends that appellant and Flores were separated by the time officers arrived and there "was no ongoing emergency," the evidence shows Castillo asked preliminary questions meant to assess the situation and determine whether the emergency was ongoing. *See Bryant*, 562 U.S. at 375–77; *Kearney*, 181 S.W.3d at 442; *see also Charles v. State*, No. 14-23-00598-CR, 2024 WL 5252041, at *5 (Tex. App.—Houston [14th Dist.] Dec. 31, 2024, no pet.) (mem. op., not designated for publication) (holding victim's statements in the officer's body camera footage about the assault were not testimonial because "even though appellant had been detained and removed from the duplex, the[] [statements] were made while the police and paramedics were still responding to a medical emergency"); *Smith v. State*, No. 10-15-00181-CR, 2015 WL 9256927, at *4 (Tex. App.—Waco Dec. 17, 2015, pet. ref'd) (mem. op., not designated for publication) (holding the complainant's statements to officers at the couple's house were non-testimonial because they were "made in response to preliminary questions by police at the scene of the crime while they were assessing and securing the scene"). Further, the interaction between Castillo and Flores was not formal or structured, and Flores did not recount the events in a deliberate, step-by-step fashion. *See Vinson*, 252 S.W.3d at 339; *Kearney*, 181 S.W.3d at 442. Accordingly, we hold that the first video did not contain testimonial statements. *See Vinson*, 252 S.W.3d at 339; *Kearney*, 181 S.W.3d at 442; *see also Charles*, 2024 WL 5252041, at *5; *Smith*, 2015 WL 9256927, at *4.

9

As to the second video, appellant argues Flores's statements were testimonial because "Flores did not seek medical attention." He contends that because Castillo called EMS instead of Flores herself, Flores was "preserving evidence for the police." Statements made for medical diagnosis or treatment generally have a primary purpose other than the pursuit of a criminal investigation. *See Bryant*, 562 U.S. at 362 n.9; *see also Sanchez v. State*, No. 10-25-00090-CR, 2026 WL 1180218, at *5 (Tex. App.—Waco Apr. 30, 2026, no pet. h.) (mem. op., not designated for publication); *Trejo v. State*, No. 13-10-00374-CR, 2012 WL 3761895, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 30, 2012, pet. ref'd) (mem. op., not designated for publication).

The second video shows Flores in the ambulance with Kincell and another paramedic. Kincell asks Flores questions, such as where she was hurt, whether he could check her neck for pain, and whether he could take her blood pressure. Flores responds accordingly, and, later, tells Kincell she is fine and that she does not want to go to the hospital. Here, Kincell's questions were related to her pain and injuries, and Flores's responses were made for medical diagnosis or treatment. Accordingly, Flores's statements had a primary purpose other than the pursuit of a criminal investigation. *See Bryant*, 562 U.S. at 361; *see also Sanchez*, 2026 WL 1180218, at *5 ("The primary purpose of Downing's out-of-court statements was . . . to facilitate communication between the complainant and Dr. Battle for the non-testimonial purposes of obtaining and providing medical treatment.").

We hold the two videos did not contain testimonial statements. Accordingly, the trial court did not err in overruling appellant's Confrontation Clause objections, *see*

*Crawford*, 541 U.S. at 59, and we overrule his first issue. As this issue is dispositive, we need not address appellant's second issue.

### III.   CONCLUSION

We affirm the trial court's judgment.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
11th day of June, 2026.